# Richmond

BOARD OF SUPERVISORS OF CHESTERFIELD COUNTY ET AL.. V.
COUNTY SCHOOL BOARD OF CHESTERFIELD COUNTY.

January 24, 1944.

Record No. 2793.

Present, Campbell, C. J., and Hudgins, Gregory, Browning, Eggleston
and Spratley, JJ.

The opinion states the case.

*William Old,* for the appellants.

*Haskins Hobson,* for the appellee.

BROWNING, J., delivered the opinion of the court.

With the excellent opinion of the learned trial judge, filed with the record in this case, we are in accord, therefore we adopt it, as the opinion of this court.

"This is a suit for a declaratory judgment brought by the County School Board of Chesterfield County against the Board of Supervisors of Chesterfield County and J. William Dance, Treasurer. No evidence was taken in the suit and it is heard on the bill and demurrer to the bill. There is no dispute as to the facts in the case.

"The Division Superintendent of Schools of Chesterfield, as directed by law, presented to the Board of Supervisors of

the County the estimates of revenues and expenditures in the spring of 1942, for the School Year 1942-43. In these estimates of expenditures was included an item for the supplement of the salary of the Superintendent of $2,700.00. The Board of Supervisors reduced this item to $2,000.00, and after this amount had been expended for this purpose, the Treasurer refused to further honor the warrants of the School Board, with the result that the Superintendent only received as supplement of salary by the School Board the sum of $2,000.00 instead of the $2,700.00 set up in the estimates of expenditures as set up by the School Board.

"It is conceded by the School Board that the Board of Supervisors have discretion, within the limits fixed by law, to reduce the total amount of money appropriated for schools below that requested by the School Board in its estimates submitted to the Supervisors. So this is not a question in this suit.

"The only question presented for decision in this suit, is whether the Board of Supervisors can reduce an individual item in the estimates or budget submitted to it by the School Board so as to bind the School Board not to expend more than the amount approved by the Supervisors for that item.

"Or, stated another way: Do the laws of Virginia only authorize the Supervisors to determine the total amount of local funds to be raised for schools, or do the supervisors, in addition to having the right to determine the total amount of local funds to be raised also have the right to determine the individual items of expenditure? Does the School Board have the right to expend the money raised from local levy or appropriation as they may think best so long as it stays within the limits of its estimates?

"The public school system, in one form or another, has been in existence in Virginia for about 100 years.

"Under the Code of 1849 a public free school system was allowed to be set up in each county after a vote of the people and when two-thirds of the voters had voted in favor of such a system. The School Commissioners were elected by the people and were to be a body corporate

and should have 'general control of school funds and schools'.

"They were required to report to the County Court the amount deemed necessary, and the Court was to lay a levy to provide the amount requested.

"The system set up under the Code of 1849 remained substantially in effect till the law was materially changed by the legislature of 1869-70. At this time a truly public school system was established.

"Under the Act of 1869-70 and the amendments made to this law and the Code of 1873, provided amongst other things:

" 'There shall be established and maintained in this state a uniform system of public free schools.'

" 'The public free school system shall be administered by the following authorities; to-wit: A Board of Education, a Superintendent of Public Instruction, County Superintendent of Schools, and District Trustees.'

"This Code of 1873 also provided for the formation of County School Boards and District School Boards and made them both parties corporate. The school trustees were to be appointed by the State Board of Education. This Code required the County and District School Boards to make 'estimate of the amount of money which will be needed' in the county and districts for the next scholastic year and required the County School Board to submit this estimate to the Board of Supervisors of the County and required the Board of Supervisors, after carefully examining such estimates, to lay a tax 'sufficient to realize the amount recommended by the County School Board in their estimates for county school purposes, or so much thereof as the Board of Supervisors may allow'.

"The law remained substantially the same in reference to schools under the Codes of 1887 and 1904, except under the Code of 1887, the School Trustees were to be appointed by a Board of School Commissioners, the Commissioners being elected by the Legislature, and under the Code of 1904, the Trustees were to be appointed by the School

Trustee Electoral Board, which was to be composed of the Commonwealth's Attorney, Division Superintendent of Schools, and a citizen to be appointed by the Judge of the Circuit Court.

"The following articles of the Constitution of Virginia bear upon the question under consideration:

" 'Sec. 111. The magisterial districts shall, until changed by law, remain as now constituted * * * * . The Supervisors of the districts shall constitute the board of supervisors of the county, which shall meet at stated periods, and at other times as often as may be necessary, lay the county and district levies, pass upon all claims against the county, subject to such appeal as may be provided by law, and perform such duties as may be required by law.'

" 'Sec. 129. The general assembly shall establish and maintain an efficient system of public free schools throughout the State.'

" 'Sec. 133. The supervision of schools in each county and city shall be vested in a school board, to be composed of trustees to be selected in the manner, for the term and to the number provided by law. Each magisterial district shall constitute a separate school district, unless otherwise provided by law, and the magisterial district shall be the basis of representation on the school board of such county or city, unless some other basis is provided by the general assembly * * * .

" 'There shall be appointed by the school board or boards of each school division, one division superintendent of schools, who shall be selected from a list of eligibles certified by the State Board of Education, and shall hold office for four years. In the event that the local board or boards fail to elect a division superintendent within the time prescribed by law, the State Board of Education shall appoint such division superintendent.'

" 'Sec. 136. Each county, city or town, if the same be a separate school district, and school district is authorized to raise additional sums by a tax on property, subject to local taxation, not to exceed in the aggregate in any one

year a rate of levy to be fixed by law, to be apportioned and expended by the local school authorities of said counties, cities, towns, and districts in establishing and maintaining such schools as in their judgment the public welfare may require * * * * . The boards of supervisors of the several counties, and the councils of the several cities and towns, if the same be separate school districts, shall provide for the levy and collection of such local school taxes.'

"The statutes which may throw some light on the question here involved are the following:

" 'Sec. 611. An efficient system of public schools of a minimum school term of one hundred and eighty school days, shall be established and maintained in all the cities and counties of the State * * * . The public school system shall be administered by the following authorities, to-wit: the State Board of Education, the Superintendent of Public Instruction, the Division Superintendents of Schools and County and City School Boards.'

" 'Sec. 611a. The school board of each and every school division in the State is hereby empowered and required to maintain the public free schools of such division for a period of at least eight months or one hundred and sixty teaching days in each school year * * * .

" 'In addition, the counties and cities shall provide, from local school taxes, as provided in section one hundred and thirty-six of the Constitution of Virginia, for the supplementing of their instructional programs such amounts as will insure the services of properly prepared and effective teaching personnel, and to the degree that financial ability and community interest in education will permit; provided further, that the counties and cities shall provide, in keeping with the laws already existing, such funds as may be necessary for debt service, capital outlay, transportation, general operation and maintenance.'

" 'Sec. 615. * * * The local school board may, out of the local fund, supplement the salary above prescribed and provide for the traveling and office expenses of the superintendent; provided, the specific amounts and the purposes

for which such amounts are designated be reported to and approved by the State Board of Education * * * .'

" 'Sec. 646. The fund applicable annually to the establishment, support and maintenance of public schools in the Commonwealth shall consist of: * * * .

" 'Second. Local funds embracing such appropriations as may be made by the board of supervisors or council for school purposes, or such funds as shall be raised by levy by the board of supervisors or council, either or both, as authorized by law, and donations or the income arising therefrom, or any other funds that may be set apart for local school purposes.'

" 'Sec. 656. The school board shall have authority, and it shall be the duty of the school board to secure, by visitation or otherwise, as full information as possible about the conduct of the schools; to take care that they are conducted according to law and with the utmost efficiency; to provide for the payment of teachers and other officers on the first of each month, or as soon thereafter as possible; to provide, for the erecting, furnishing, and equipping of necessary school buildings and appurtenances and the maintenance thereof; to provide for all public schools an adequate and safe supply of drinking water and see that the same is periodically tested and approved by or under the direction of the State Board of Health, either on the premises or from specimens sent to said board; to provide such textbooks as may be necessary for indigent children attending public schools; in general, to incur such costs and expenses, but only such costs and expenses as are provided for in its budget without the consent of the tax levying body; to provide for the consolidation of schools and for the transportation of pupils whenever such procedure will contribute to the efficiency of the school system; to receive and audit all claims arising from commitments made pursuant to the provisions of this section and, by resolution or recorded vote, to approve and issue warrants on the county treasurer in settlement of those of such claims that are found to be valid. * * *

" 'It shall be the duty of the school board to perform such other duties as shall be prescribed by the State Board of Education or are imposed by any other section of the Code.'

" 'Sec. 657. It shall be the duty of the division superintendent of schools, on or before the first day of April of each year, to prepare, with the advice of the school board, an estimate of the amount of money which will be needed during the next scholastic years, for the support of the public schools of the county or city. These estimates shall be prepared on forms furnished by the State Board of Education, approved by the Director of the Budget and the Comptroller, and shall set up the amount of money necessary for overhead charges, for instruction, for operation, for maintenance, for auxiliary agencies, for miscellaneous, and for permanent capitalization and such other headings or items as may be necessary. The estimate so made shall clearly show all necessary details in order that the board of supervisors and the taxpayers of the county or the council and taxpayers of the city, may be well informed as to every item of the estimate. On a basis of this estimate, the division superintendent of schools shall request the board of supervisors of the county or council of the city to fix such school levy as will net an amount of money necessary for the operation of the schools; or in lieu of such levy to make a cash appropriation from the general county or city levy for operation of the schools. Neither the supervisors of the county nor the council for the city can decrease at any time in the school term the amount appropriated by such supervisors of the county or such council of the city for schools for said term, except by the same percentage of reduction as all other appropriations are reduced, but this provision shall not apply to fixed obligations, and the interest thereon, created by bond issues or by written contracts calling for regular or installment payments. If the board of supervisors or council refuse to lay such a levy or make such cash appropriation as is recommended and requested by the division superintendent, then, on a petition of not less than twenty per cent of the qualified voters of the county or city

qualified to vote, requesting the same, the circuit court of the county or corporation court of the city or the Judge thereof in vacation may, in its or his discretion, order an election by the people of the county or city to be held during the month of June, to determine whether such levy or cash appropriation in lieu of such levy shall or shall not be fixed, provided, however, that in those counties and cities in which a school levy is made the election shall be limited to the question as to whether or not such levy shall be increased.'

" 'Sec. 698a. Each county and each city is authorized to raise sums by a tax on all property, subject to local taxation, of not less than fifty cents nor more than one dollar on the one hundred dollars of the assessed value of the property in any one year to be expended by the local school authorities in such counties and cities in establishing, maintaining and operating such schools as in their judgment the public welfare may require. In lieu of making such school levy, the board of supervisors in the counties and the councils in the cities may, in their discretion, make a cash appropriation from the general county or general city levy of an amount not less than the sum required by the county or city school budget provided by section six hundred and fifty-seven, approved by the board of supervisors of the county or council of the city in no event to be less than the amount which would result from the laying of the minimum school levy authorized by this section for the establishment, maintenance and operation of the schools of such county or city, without the express permission of the State Board of Education. In addition to this, the board of supervisors of any county, or the council of any city, may appropriate from any funds available such sums as in the judgment of such board of supervisors of such county or council of such city may be necessary or expedient for the establishment, maintenance and operation of the public schools of such county or city * * * .'

"It has been the policy of the State, under present laws and for many years past, to repose in one board only,

the power and authority to raise money by taxation for local purposes, and this board is the board of supervisors. The reasons for this are obvious. One board can take a comprehensive view of all local tax needs, and can control the total amount of taxes to be raised and can fix the rate of taxation at such an amount as in their judgment the people can and ought to pay. It can examine and weigh the needs and importance of the various functions of government to be supported by local taxation and can make a just apportionment amongst the various agencies and functions of government. Throughout the history of the public school system in Virginia, the authority to lay local taxes for schools has been placed first in the county court and then in its successor, the board of supervisors. Except for the raising of local taxes for schools, both historically and under our present laws, the boards of supervisors are not charged by law with the establishment, maintenance and operation of the public school system.

"From the beginning the school boards have been made bodies corporate. They have been given the responsibility by law of establishing, maintaining and operating the school system, along with the State Board of Education, Superintendent of Public Instruction and the Division Superintendent of Schools.

"See Sections 133 and 136 of the Constitution of Virginia, and Sections 611, 611a, 656, 657, 698a of the present Code of Virginia. There are other sections of the Code which set up additional duties of the school boards in reference to the operation of the school system, and which further show they are to run the schools.

"I am of the opinion that the Constitution of Virginia and the statutes of the State clearly set up the school board as an independent local agency charged by law with establishing, maintaining and operating 'an efficient system of public free schools'. It would be illogical to make the School Board solely responsible for the efficient conduct of the school system, and then give another board control over the expenditures to be made by the School Board. The

school boards, because of the duties placed upon them by law, know accurately its personnel, its mode and manner of operation and the importance of the various parts of the system. This information, the board of supervisors do not have. If the board of supervisors has control of the various items of the budget, it could exercise a large amount of control over the operation of the school system, and there would be a serious division of authority, which it would not seem the legislature would have intended. The method of selecting school trustees, which is by appointment by a School Trustee Electoral Board, composed of three citizens appointed by the Circuit Court (Sec. 653a1 of Code) shows the policy of the State to make these school boards as far removed from politics as is possible. The boards of supervisors are elected by the people and are naturally more likely to be influenced by political considerations. It does not seem probable the legislature, after removing the school board as far as possible from politics, would give to the board of supervisors, control of the detailed expenditure of school funds. It is not intended by the above to intimate that politics had anything to do with the matter involved in this particular case, but this opinion attempts to construe these laws as they apply on a statewide basis.

"The school board has been required to submit to the board of supervisors an 'Estimate' of expenditures to be made by them since the Code of 1849. Under this law the county court was required to lay a levy to produce the amount of money shown on the estimate as needed, but since the Act of 1869-70 the tax laying authority has had discretion as to the amount of money to be raised for school purposes. The word 'estimate' has been used continuously in the school law up to the present time, but seems to have the same meaning as the word 'budget'. There can be no question that up until the Act of 1928, p. 1204, where the estimate was required to be made in the form as it is in the present law, that the estimate submitted to the board of supervisors was simply to give them some basis upon which to lay the levy and that the board of supervisors did not

have the power to reduce or eliminate individual items of the estimate. Up to this time the law did not require the estimate to be made in any particular form, nor did it require that the proposed expenditures be set out in detail.

"Does the passage of the Act of 1928 change this situation? I am of the opinion that it does not. It provides that, 'The estimate so made shall clearly show all necessary details in order that the board of supervisors and the taxpayers of the county or the council and taxpayers of the city, may be well informed as to every item of the estimate.'

"It is noted that the estimate is for the information of the board of supervisors, who have to lay the levy or make the appropriations, and for the information of the taxpayers, who ordinarily have nothing to do with raising the money. Both the board of supervisors and taxpayers are put in the same category in this regard. I am further of the opinion that this provision of law is required so that the board of supervisors will have before them in detail the funds asked by the school board, so that they may examine the estimate and from the detailed information there given decide, within the limits prescribed by law, the rate of levy or amount of appropriation they will make for school purposes. Section 133 of the Constitution provides, 'The supervision of schools in each county and city shall be vested in a school board * * * ' and 136 of the Constitution of Virginia provides that each county is authorized to raise additional sums by a tax on property 'to be apportioned and expended by the local school authorities of said counties, cities, towns and districts in establishing and maintaining such schools as in their judgment the public welfare may require. * * * The boards of supervisors of the several counties, and the councils of the several cities and towns, if the same be separate school districts, shall provide for the levy and collection of such local school taxes'.

"It is noted from these constitutional provisions that the local school authorities, which is the school board, is to apportion and expend this money, and that all the supervisors have to do with it is to lay the levy. Section 698a

of the Code provides that each county is authorized to raise sums by a tax on all property, subject to local taxation, 'to be expended by the local school authorities in such counties and cities establishing, maintaining and operating such schools as in their judgment the public welfare may require'.

"Section 656 provides that 'The school board shall have authority, and it shall be the duty of the school board * * * in general, to incur such costs and expenses, but only such costs and expenses as are provided for in its budget without the consent of the tax levying body; * * * .'

■ "Under this last quoted section, I am of the opinion that 'its budget' refers to the estimate submitted by the school board to the board of supervisors. If the school board wanted to expend money for purposes not set up in its estimate, then it would be required to get the consent of the tax levying body. In regard to the specific item under consideration in this suit the school board is given specific authority to supplement the salary of the superintendent from local funds. Sec. 615.

"The case of *School Board of Carroll County* v. *Shockley*, 160 Va. 405, a special act of the legislature laying a levy of 50 cents on the property in Carroll County for the purpose of building a high school at Hillsville, was held unconstitutional. At page 409 the court has this to say in reference to school boards:

" 'The instant case presents a somewhat analogous situation. Sec. 133 of the Constitution provides for the creation of a school board in each county and city, vested with the supervision of the public schools within their several jurisdictions, to be selected in the manner prescribed by law. Section 653 of the Code provides that each county school board shall be a body corporate, and may in its corporate capacity sue, or be sued, contract, or be contracted with and clothed with all the powers and charged with all the duties, obligations and responsibilities imposed upon such board by law. Among the manifold powers and duties prescribed by the statutes on the subject, the county school board is vested with the exclusive control of all school prop-

erty in the county, both real and personal, has authority to condemn land for and erect schoolhouses, employ teachers, and to incur other expenses incidental to the proper operation and administration of the public schools of the county. Under Sections 656 and 676 the school board alone is vested with the use and control of all school funds, whether derived from state appropriations, local taxation, or other sources, and has exclusive authority to expend the funds set apart by law for school purposes * * * '.

"The case of *Scott County School Board* v. *Scott County Board of Supervisors*, 169 Va. 213, was a mandamus proceeding brought by the school board against the board of supervisors to compel the board of supervisors to lay a levy sufficient to produce the money requested by the school board in their estimate submitted to the supervisors. The school board contended that the board of supervisors had no right to increase or reduce the amount requested in the school budget. The board of supervisors had reduced the amount it had appropriated for schools $23,000.00 below the amount requested by the school board by reducing and . eliminating some items. It was held in this case that the board of supervisors, within the limits fixed by law, had discretion as to the amount of money it would raise for school purposes and the mandamus was denied. At p. 216 the opinion states:

" 'We think the board of supervisors had the right and it is their duty to scan the items of expense of the school system. By an Act of 1934 ch. 97, p. 140, the General Assembly directs that the schools must be kept open for eight months each year. Counties shall provide from local taxes for supplementing State funds in such amount as may be necessary for the purpose, and to secure competent teachers "to the degree that financial and community interest · in education will permit". Section 2. The financial ability of a county is better known to the board of supervisors than to anyone else, and it is their duty to determine whether or not the estimates submitted for school purposes are in line with the "financial ability" of the county.

" '(3)   Section 656 provides the things ·the school board must do and among them "to incur such costs and expenses, but only such costs and expenses as are provided for in its budget without the consent of the tax levying body". This must be shown in a budget which has been approved by the board of supervisors or by its consent.'.

"And at page 217:

" '(4, 5)   This Act clearly shows the legislative intent to place in the hands of the board of supervisors the power and duty of supervising school expenses. It provides that a detailed estimate must be submitted to the board of supervisors in order that the members may be properly informed of the expense. It further provides that the school superintendent must request the board of supervisors to lay the levy in accordance with the estimate and that after the appropriation is made the board of supervisors cannot decrease it during the school term. This is but another way of saying that they have the right to curtail the budget prior to the school term.'

"The real question at issue in this case was whether a mandamus would lie to compel a board of supervisors to appropriate for school purposes the amount of money requested by the school authorities in their estimate submitted to the board of supervisors. It was held a mandamus would not lie.

"Section 3 of the opinion quoted above could be construed as holding that the board of supervisors have the right to reduce or eliminate individual items of the budget submitted by school authorities. But taking ·the opinion as a whole, I doubt whether the court intended to hold that the board of supervisors had a right to reduce or eliminate individual items of the budget submitted by the school authorities, as this was not necessary for a decision of this particular case.

"I am therefore of the opinion that the board of supervisors has the right, within the limits prescribed by law, in their discretion, to fix the amount of money to be raised by local taxation for school purposes at whatever

amount they see fit, but they are concerned only with the total amount of tax to be levied, and not with the individual items of the school budget, except in so far as it helps them to determine the total amount of the tax to be levied. After the board of supervisors have appropriated money for schools, the exclusive right to determine how this money shall be spent is in the discretion of the school board, so long as they stay within the limits set up in the budget." The decree of the trial court is affirmed.

*Affirmed.*