Eva ALLEN et al.

v.

**COUNTY SCHOOL BOARD OF PRINCE EDWARD COUNTY, etc. et al.**

Civ. A. No. 1333.

United States District Court
E. D. Virginia,
Richmond Division.

Aug. 25, 1961.

See also D.C., 28 F.R.D. 367.

S. W. Tucker, Emporia, Va., Robert L. Carter, New York City, for petitioners.

Frederick T. Gray, Atty. Gen., of Virginia, R. D. McIlwaine, Asst. Atty. Gen., of Virginia, J. Segar Gravatt, Blackstone, Va., Frank N. Watkins, Farmville, Va., Collins Denny, Jr., John F. Kay, Jr., William C. King, Richmond, Va., for respondents.

LEWIS, District Judge.

The issues raised, in this phase of the Prince Edward County school case, are:

Whether or not Prince Edward County can close and refuse to maintain its heretofore existing free public school system in order to avoid the racial discrimination prohibited by the Supreme Court of the United States, in Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873; 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083; and

Whether or not the defendants, individually or in concert, have deliberately circumvented or attempted to circumvent or frustrate the order of this Court entered herein on the 22nd day of April, 1960.

In order to properly answer these questions it is necessary and appropriate to briefly review the history of this litigation.

This suit was originally instituted in 1951, and sought to enjoin the enforcement of the provisions of the Virginia Constitution and Code,[1] which required the segregation of Negroes and whites in public schools. After years of litigation, the basic question raised therein was presented to the Supreme Court of the United States and was decided in a consolidated hearing, styled Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873. The holding in that case was:

"The Fourteenth Amendment forbids States to use their governmental powers to bar children on racial grounds from attending schools where there is state participation through any arrangement, management, funds or property." Cooper v. Aaron, 358 U.S. 1, 78 S.Ct. 1401, 1403, 3 L.Ed.2d 5, 19.

Thus the provisions of the Virginia Constitution and Code referred to were declared unconstitutional and void.

---

1. Virginia Constitution, Section 140, Code 1950, § 22–221.

That this decision was unpopular in most of the South, is understating the fact. Most of the southern states, including Virginia, adopted new laws in order to meet the situation thus created. Many of these new laws were declared unconstitutional, both by the federal and state courts.[2]

In compliance with the Brown decision, supra, this Court entered an order enjoining the defendants from discriminating against the plaintiffs in admission to the public schools of Prince Edward County solely on account of race, and further directed the defendants to proceed promptly with the formulation of a plan to comply therewith, commencing with the opening of the school year 1965.

The Court of Appeals for the Fourth Circuit, 266 F.2d 507, under date of May 5, 1959, reversed this Court and remanded the case with directions to issue an order in accordance with that opinion, which provided, among other things, that the defendants be enjoined from any action that regulates or affects on the basis of race or color the admission, enrollment or education of the infant plaintiffs, or any other Negro children similarly situated, to the high schools operated by the defendants in the County and to take immediate steps in this regard to the end that the applications be considered so as to permit the entrance of qualified persons into the white schools in the school term beginning September 1959. No decree was entered pursuant to the mandate of the Court of Appeals until the petitioners presented an appropriate order for entry therein on April 22, 1960, pertinent portions of said order being:

"The defendants are restrained and enjoined from any action that regulates or affects on the basis of race or color the admission, enrollment or education of the infant plaintiffs, or any other Negro children similarly situated, to the high schools operated by the defendants in the County and that the defendants receive and consider the applications of such persons for admission to such high schools without regard to race or color.

"That the defendants make plans for the admission of pupils in the elementary schools of the County without regard to race or color and to receive and consider applications to this end at the earliest practical day."

This Court and all counsel of record had knowledge of the fact that the public schools of Prince Edward County were closed prior to the entry of the said order.

The Board of Supervisors of Prince Edward County, anticipating the aforesaid decision of the Court of Appeals for the Fourth Circuit, refused to levy any taxes or appropriate any money for the maintenance of the public schools during the school year 1959–60, resulting in the closing thereof.

This action was in accord with the expressed policy of the Board of Supervisors (adopted in May 1956) to abandon public schools and educate the children in some other way if that be necessary to preserve separation of the races in the schools of Prince Edward County.[3]

All public schools in Prince Edward County have remained closed from that date to the present time and apparently will so remain until this or some state court directs that they be opened and maintained. Unfortunately, as a result thereof, all of the children of Prince Edward County, both white and colored, have been deprived of a public education since June 1959. In fact, none of the approximately 1,800 colored children have received any formal education since that date. Nearly all of the 1,500 white children have been attending private

2. Harrison v. Day, 200 Va. 439, 106 S.E. 2d 636; James v. Almond, D.C., 170 F. Supp. 331; Cooper v. Aaron, 358 U.S. 1, 78 S.Ct. 1401, 3 L.Ed.2d 5, 19; Bush v. Orleans Parish School Board, 191 F. Supp. 871, 875.

3. See plaintiffs' Exhibit No. 2.

schools, operated by the Prince Edward School Foundation.

Under these circumstances should this Court enter an order directing the appropriate officials of Prince Edward County to reopen and maintain its public schools?

Section 129 of the Constitution of Virginia provides:

"Free schools to be maintained.— The General Assembly shall establish and maintain an efficient system of public free schools throughout the State."

The Supreme Court of Appeals of Virginia, in Harrison v. Day, 200 Va. 439, 106 S.E.2d 636, 646, held that Section 129 of the Virginia Constitution is still in the organic law (of Virginia) and must be complied with. The Court further stated in its opinion:

"that section [129] requires the State to 'maintain an efficient system of public free schools throughout the State.' That means that the State must support such public free schools in the State as are necessary to an efficient system, including those in which the pupils of both races are compelled to be enrolled and taught together, however unfortunate that situation may be."

Therefore it would appear from this decision that the Supreme Court of Appeals of Virginia has determined that public schools must be maintained in Prince Edward County, Virginia.

However, the defendants earnestly contend that the public schools in Virginia are not now and never have been operated by the state or by any state agency; that they are now and always have been owned, operated, managed and controlled by local (that is, county or city) school boards. The defendants further contend that other sections of the Virginia Constitution and certain statutes made pursuant thereto must be considered and construed in order to determine this question.

Counsel for the plaintiffs contend it is not necessary for this Court or the Supreme Court of Appeals of Virginia to further construe and/or pass upon the validity of any sections of the Virginia Constitution or statutes made pursuant thereto in order to properly decide this issue. They contend the closing of the public schools in Prince Edward County, while maintaining public schools in every other city and county in the state, violates the Fourteenth Amendment to the Federal Constitution, and cite James v. Almond, D.C., 170 F.Supp. 331, 337, in support thereof:

"While the State of Virginia, directly or indirectly, maintains and operates a school system with the use of public funds, or participates by arrangement or otherwise in the management of such a school system, no one public school or grade in Virginia may be closed to avoid the effect of the law of the land as interpreted by the Supreme Court, while the state permits other public schools or grades to remain open at the expense of the taxpayers. In so holding we have considered only the Constitution of the United States as it is unnecessary, in our opinion, to pass upon the specific provisions of the Constitution of Virginia which deals directly with the free public school system of the state. We do not suggest that, aside from the Constitution of Virginia, the state must maintain a public school system. That is a matter for state determination. We merely point out that the closing of a public school, or grade therein, for the reasons heretofore assigned violates the right of a citizen to equal protection of the laws and, as to any child willing to attend a school with a member or members of the opposite race, such a school-closing is a deprivation of due process of law."

■ Whether the State of Virginia or the County of Prince Edward, technically

speaking, owns and operates the public schools is of no concern of the children who are being deprived of free public education. The question that must and should be judicially determined is: Can the public schools, heretofore maintained in Prince Edward County, be closed in order to avoid the racial discrimination prohibited by the Fourteenth Amendment?

Since the final answer to that question requires the interpretation of perhaps several sections of the Virginia Constitution and statutes adopted pursuant thereto, federal abstinence is the proper procedure.

"This now well-established procedure is aimed at the avoidance of unnecessary interference by the federal courts with proper and validly administered state concerns, a course so essential to the balanced working of our federal system. To minimize the possibility of such interference a 'scrupulous regard for the rightful independence of state governments * * * should at all times actuate the federal courts,' Matthews v. Rodgers, 284 U.S. 521, 525 [52 S.Ct. 217, 219, 76 L.Ed. 447], as their 'contribution * * * in furthering the harmonious relation between state and federal authority * * *.' Railroad Commission of Texas v. Pullman Co., 312 U.S. 496 [501, 61 S. Ct. 643, 85 L.Ed. 971]." Harrison v. N. A. A. C. P., 360 U.S. 167, 79 S.Ct. 1025, 1030, 3 L.Ed.2d 1152.

Counsel for all parties having indicated that an appropriate suit would be forthwith instituted in the Virginia state courts, this Court will defer its ruling on this question until the Supreme Court of Appeals of Virginia has rendered its decision, provided the said suit is filed within sixty days from this date.

██ Having thus disposed of the first question before the Court, and now turning to the second question, it is likewise necessary and proper to briefly review what has transpired in Prince Edward County subsequent to January 1, 1959. The record thus made is as follows:

The County Board of Supervisors of Prince Edward County, anticipating the May 5, 1959, decision of the Court of Appeals for the Fourth Circuit, failed or refused to make any funds available to the Prince Edward School Board for the fiscal and school years 1959–60, 1960–61 and 1961–62.

No public schools have been operated in the County since June 1959.

On May 16, 1959, certain private citizens obtained a charter for the Prince Edward School Foundation in order that private schools would be available for white children.

Such private schools were conducted during the school year 1959–60 for white children only; no tuition was charged; these schools were supported by private contributions.

For the school year 1960–61, the Prince Edward School Foundation charged a tuition of $240 for its elementary students and $265 for its high school students.

On July 18, 1960, the Board of Supervisors of Prince Edward County adopted an ordinance providing for $100 grants in aid of the education of any Prince Edward County child whose parent or guardian applied therefor, who attended or proposed to attend a school that met the requirements of the ordinance.[4]

The Board of Supervisors adopted, on the same date, an ordinance providing for a tax credit, not to exceed 25% of the total county real and personal property taxes for contributions made to private nonprofit nonsectarian schools located within Prince Edward County.[5]

During the school year 1960–61, thirteen hundred twenty-seven white students enrolled in the schools being operated by the Prince Edward School

4. See plaintiffs' Exhibit No. 15.

5. See plaintiffs' Exhibit No. 16.

Foundation, obtained state and county tuition grants, totaling $225 for each elementary student and $250 for each high school student.

During the school year 1960–61, the Prince Edward School Foundation received private contributions in the amount of $200,000 which were credited to its building fund, its library fund and its operating fund.

The Treasurer of Prince Edward County credited as payments on account of county tax bills the sum of approximately $56,000, all of which was contributed to the Prince Edward School Foundation.

During both the 1959–60 and 1960–61 school years practically all of the white school teachers who formerly taught in the public school system in Prince Edward County were employed as teachers by the Prince Edward School Foundation.

During the 1960–61 school year the Prince Edward School Foundation schools were accredited by the State Board of Education.

In 1960–61, the sum of $39,360 was received by Prince Edward County, from the State of Virginia as its share of the State Constitutional School Fund. These so-called constitutional funds were neither requested nor received by Prince Edward County during the school year 1959–60. This money was used by the School Board for the payment of debt service charges, repairs and upkeep of school buildings and grounds, fire insurance and other fixed charges and administration costs.

Five Negro children residing in Prince Edward County applied for and received state and county tuition grants for attending public schools elsewhere in Virginia.

The Prince Edward County Christian Association, a Negro association, conducted training centers for Negro children beginning in the late fall of 1959. These centers do not meet the requirements for either state or county tuition grants.

Approximately one-third of the Negro school children of Prince Edward County attended these training centers. The other Negro school children of Prince Edward County have not received any schooling or training of any kind since the closing of the public schools.

By the adoption of these County ordinances, and the payment of the State tuition grants during the time the schools of Prince Edward County were closed, have any of the defendants circumvented or attempted to circumvent or frustrate the anticipated order of this Court, entered pursuant to the mandate of the Court of Appeals?

We think they have.

"The basic decision in Brown v. Board of Education was unanimously reached by the Supreme Court of the United States. Since the first Brown opinion three new Justices have come to the court. They are at one with the Justices still on the court, who participated in that basic decision, as to its correctness and that decision is now unanimously reaffirmed. * * *"

"The principles announced in that decision and the obedience of the State to them, according to the command of the Constitution, are indispensable for the protection of the freedoms guaranteed by our fundamental charter for all of us." Cooper v. Aaron, 358 U.S. 1, 78 S.Ct. 1401, 1410, 3 L.Ed.2d 5, 19.

"In short, the constitutional rights of children not to be discriminated against in school admission on grounds of race or color declared by this Court in the Brown case can neither be nullified openly and directly by state legislators or state executive or judicial officers, nor nullified indirectly by them through evasive schemes for segregation whether attempted 'ingeniously or ingenuously.' Smith v. Texas, 311 U.S. 128, 132 [61 S.Ct. 164, 166, 85 L.Ed. 84]." Cooper v.

Aaron, 358 U.S. 1, 78 S.Ct. 1401, 1409, 3 L.Ed.2d 5, 19.

Without questioning the purpose or motives of the members of the Board of Supervisors of Prince Edward County, the end result of every action taken by that body was designed to preserve separation of the races in the schools of Prince Edward County.

"When a State [6] exercises power wholly within the domain of state interest, it is insulated from federal judicial review. But such insulation is not carried over when state power is used as an instrument for circumventing a federally protected right. This principle has had many applications. It has long been recognized in cases which have prohibited a State from exploiting a power acknowledged to be absolute in an isolated context to justify the imposition of an 'unconstitutional condition.' What the Court has said in those cases is equally applicable here, viz., that 'Acts generally lawful may become unlawful when done to accomplish an unlawful end, United States v. Reading Co., 226 U.S. 324, 357 [33 S.Ct. 90, 57 L.Ed. 243] * * *." Gomillion v. Lightfoot, 364 U.S. 339, 81 S.Ct. 125, 130, 5 L.Ed.2d 110.

Approximately $132,000 from general tax funds were paid to those residents of Prince Edward County who sent their children to schools maintained by the Prince Edward School Foundation, (a segregated white school). An additional $56,000 of tax revenue, in the form of tax credits, was used for this purpose. Like aid was not available to the colored residents of Prince Edward County, for the obvious reason there was no private colored school in existence. By closing the public schools, the Board of Supervisors have effectively deprived the citizens of Prince Edward County with a freedom of choice between public and private education. County tax funds have been appropriated (in the guise of tuition grants and tax credits) to aid segregated schooling in Prince Edward County.

That, to say the least, is circumventing a constitutionally protected right.

We do not hold these County ordinances [7] are facially unlawful. We only hold they become unlawful when used to accomplish an unlawful end, (the perpetuation of segregated schooling in Prince Edward County).

Therefore an order will be entered herein restraining and enjoining the members of the Board of Supervisors of Prince Edward County, the County Treasurer and their respective agents and employees from approving and paying out any county funds purportedly authorized by the so-called "grant in aid" ordinance, adopted July 18, 1960, and from allowing any tax credits purportedly authorized by the so-called "tax credit" ordinance, adopted July 18, 1960, during such time the public schools of Prince Edward County remain closed.

■ We are next confronted with the question of the lawfulness of the payment of state tuition grants to residents of Prince Edward County during the time public schools are closed.

The policy of the Commonwealth of Virginia as enunciated in Section 22–115.29 of the Code of Virginia, is as follows:

"The General Assembly, mindful of the need for a literate and informed citizenry, and being desirous of advancing the cause of education generally, hereby declares that it is the policy of this Commonwealth to encourage the education of all of the children of Virginia. In furtherance of this objective, and to afford each individual freedom in

---

6. Prince Edward County is likewise limited by this rule of law.

7. Educational grant in aid ordinance adopted July 18, 1960; Tax credit ordinance adopted July 18, 1960.

choosing public or private schooling, the General Assembly finds that it is desirable and in the public interest that scholarships should be provided from the public funds of the State for the education of the children in nonsectarian private schools in or outside, and in public schools located outside, the locality where the children reside; and that counties, cities and towns, if the town be a separate school district approved for operation, should be authorized to levy taxes and appropriate public funds to provide for such scholarships. (1960, c. 448.)"

Thus a "freedom of choice" between public and private schooling is clearly contemplated.

That the state did not intend its "scholarships" would be available in communities without public schools is best evidenced by reference to the regulation of the State Board of Education governing public scholarships.[8] This rule reads as follows:

"Scholarships will be available for pupils of legal school age who are eligible to attend the public schools in the county, city or town in which the parent, guardian or such other person standing in loco parentis is a bona fide resident."

This rule is plain and unequivocal. State scholarships are not available to persons residing in counties that have abandoned public schools.

An order will therefore be entered restraining and enjoining the County Superintendent of Prince Edward County, the Superintendent of Public Instruction, their agents and employees, and all persons working in concert with them, from receiving, processing or approving any applications for state scholarship grants from persons residing in Prince Edward County so long as the public schools of Prince Edward County remain closed.

■ The order of April 20, 1960, provides, among other things:

"That the defendants (County Superintendent and School Board) make plans for the admission of pupils in the elementary schools of the County without regard to race or color and to receive and consider applications to this end at the earliest practical day."

That no such plans have been made is admitted. The defendants justify their failure to comply with the plain language of this order by stating they acted on advice of counsel and that it appeared useless to make such plans so long as the public schools of the County were closed.

This Court cannot accept these reasons as justification for failing to comply with this portion of the order. Therefore the defendants are herewith directed to forthwith proceed with the preparation of such plans, so that they may be readily available when and if the public schools of Prince Edward County are reopened. The defendants should advise the Court in writing of the progress made on or before November 15, 1961.

There is no evidence the School Board of Prince Edward County has leased or transferred or intends to lease or transfer any school property. The prayer for injunctive relief is therefore denied.

Counsel for the plaintiffs should prepare an appropriate order in accordance with this opinion, and submit the same to counsel for defendants for approval, and it will be entered accordingly, effective this date. Costs will be assessed against the defendants.

8. See plaintiffs' Exhibit No. 20.