Eva ALLEN et al., Plaintiffs,

v.

COUNTY SCHOOL BOARD OF PRINCE EDWARD COUNTY, etc., et al., Defendants.

Civ. A. No. 1333.

United States District Court
E. D. Virginia,
Richmond Division.

July 25, 1962.
As Amended Oct. 10, 1962.

S. W. Tucker and Henry L. Marsh, III, Richmond, Va., and Robert L. Carter, New York City, for plaintiffs.

Collins Denny, Jr., and John F. Kay, Jr., Richmond, Va. and C. F. Hicks, Gloucester, Va., for County School Board of Prince Edward County and T. J. McIlwaine, Division Superintendent of Schools.

J. Segar Gravatt, Blackstone, Va., and F. N. Watkins, Farmville, Va., for Board of Supervisors of Prince Edward County.

R. D. McIlwaine, III, Asst. Atty. Gen. of Virginia, for State Board of Education and Superintendent of Public Instruction.

Frederick T. Gray, Sp. Asst. Atty. Gen., Richmond, Va., for Commonwealth of Virginia.

LEWIS, District Judge.

The infant plaintiffs in the Prince Edward school case are again before this Court seeking admission to the public schools of Prince Edward County, Virginia, on a non-discriminatory basis—all in accord with the Brown[1] decisions.

Rather than comply with those decisions and the order of this Court, the defendant Board of Supervisors caused the closing of all public schools in the county.

Thereafter the petitioners filed an amended supplemental complaint raising the following issues:

(1) Whether the public schools heretofore maintained in Prince Edward County can be closed in order to avoid the racial discrimination prohibited by the Fourteenth Amendment of the United States Constitution.

(2) Whether the defendants, individually or in concert, have deliberately circumvented, or attempted to circumvent or frustrate, the order of this Court entered herein on the 22nd day of April, 1960.

Issue numbered (2) was partially determined August 23, 1961, and it is not necessary to repeat those rulings in this opinion (see memorandum opinion dated August 23, 1961, D.C., 198 F.Supp. 497, and order dated November 1, 1961).

This Court has repeatedly stated that the Prince Edward school case would not be terminated until this or some other court determined issue numbered (1), above recited.

Upon the assurance of counsel for petitioners that such a suit would be filed in the state courts, and upon the further assurance of counsel for the Board of Supervisors of Prince Edward County that he would file such a suit[2] if the petitioners failed to so do, this Court abstained from determining the issue, pending a final ruling by the Supreme Court of Appeals of Virginia.

But such was not to be—true the petitioners filed a petition for writ of mandamus in the Supreme Court of Appeals[3] to compel the Board of Supervisors of Prince Edward to appropriate money for the maintenance and operation of free public schools in the county. However, they expressly informed that court in their printed reply brief that "There are no Federal questions (involved) in this proceeding," and Chief Justice Eggleston, speaking for the Supreme Court of Appeals, said " * * * and we perceive none."

The defendants now move this Court to dismiss or, in the alternative, to abstain from determining the issues presented in the amended supplemental bill of complaint upon the ground the petitioners deliberately failed and refused to comply with the order[4] of this Court by deleting all federal questions from the suit filed in the Supreme Court of Appeals.

This motion would be meritorious had the defendants filed an appropriate answer and/or countersuit to the plaintiffs' petition for writ of mandamus so that the citizens of Virginia would have learned from their highest state court whether the public schools of Prince Edward County could be legally closed in accordance with the State and Federal Constitutions, under the circumstances and conditions there existing.

This "issue" must be determined—and dismissal of the pending suit will not accomplish that end. Therefore, the motion of the defendants to dismiss the amended supplemental complaint will be denied.

█ The doctrine of abstention is well embedded in the federal procedure, and

1. Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954); 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083 (1955).

2. This assurance was made after conferring with the Attorney General of Virginia and counsel for the School Board of Prince Edward County.

3. Griffin, Jr. v. Board of Supervisors of Prince Edward County, 203 Va. 321, 124 S.E.2d 227 (1962).

4. Order of November 1, 1961.

rightfully so. It is aimed at the avoidance of unnecessary interference by the federal courts with properly administered state concern. See Harrison v. N.A.A. C.P., 360 U.S. 167, 79 S.Ct. 1025, 3 L.Ed. 2d 1152 (1959). However, the District Court cannot avoid its duty to adjudicate a controversy properly before it by postponing the exercise of its jurisdiction by invoking the doctrine of abstention. See County of Allegheny v. Frank Mashuda Company, 360 U.S. 185, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959). And especially so when it is advised by counsel for all parties that none of them intends to file another suit in the state courts.[5]

The Prince Edward County public schools have been closed for three years and will remain closed unless they be legally required to reopen. During the interim practically all of the negro children in the county have been denied a formal education. The white children are being educated in the (private) Prince Edward Foundation schools, or away from home, at the expense of their parents and friends. All other children in the State of Virginia, both negro and white, are given the privilege of being educated in public schools at public expense.

This is a suit in equity instituted by the infant plaintiffs requesting this Court to declare and insure them, and all others similarly situated, their constitutional rights. To further abstain is to further delay—and further delay in the formal education of 1,700 children would create an irreparable loss. These children are entitled to know whether any of their federally protected rights are being abridged. The motion to further abstain will be denied.

That the Board of Supervisors of Prince Edward caused the closing of the public schools in the county in order to avoid the racial discrimination prohibited by the Supreme Court of the United States [6] cannot be seriously questioned. This action was in accord with the Board's expressed policy (adopted in May, 1956) to abandon public schools and educate the children some other way if that be necessary to preserve segregation of the races in the schools of Prince Edward County.[7]

The defendants attempt to justify their action and/or inaction upon the theory that public schools of Prince Edward County are owned, operated, managed, and controlled by the local school board—that they are not now and never have been operated by the state or any state agency—that the Fourteenth Amendment is addressed solely to the state—that the Board of Supervisors cannot be compelled to levy taxes or appropriate money for the maintenance of free public schools—and that the reason or motive back of such action or inaction is beyond judicial review.

In determining whether these contentions are well-founded, it is necessary and proper to review and re-examine the Federal and State Constitutions, the implementing statutes, and the recent court decisions pertaining to public education. In so doing, we find the Supreme Court of Appeals of Virginia in the Griffin suit, supra, held that Section 136 of the Constitution of Virginia and Code Sections 22–126 and 22–127, as amended, which implement the constitutional provision, vest in the Board of Supervisors of Prince Edward County the discretionary power and authority to determine what additional sums, if any, should be raised by local taxation to supplement the funds provided by the state for the support of the schools in the county. That holding was in accord with previous decisions of that court.

5. Counsel for petitioners contend state constitutional questions are not involved —they seek only federal relief. The Attorney General and counsel for the Board of Supervisors and the School Board of Prince Edward admit both State and Federal constitutional questions are involved but contend they have neither the authority nor the duty to file an appropriate suit in the state courts.

6. Brown v. Board of Education, supra.

7. See Petitioners' Exhibit No. 2.

See School Board of Carroll County v. Shockley, 160 Va. 405, 168 S.E. 419 (1933). See also Almond v. Gilmer, 188 Va. 1, 49 S.E.2d 431 (1948); Scott County School Board v. Board of Supervisors, 169 Va. 213, 193 S.E. 52 (1937); Board of Supervisors of Chesterfield County v. County School Board, 182 Va. 266, 28 S.E.2d 698 (1944).

There is not anything in the Griffin decision indicating that the Board of Supervisors has a duty to maintain or operate public schools. To the contrary, Chief Justice Eggleston, speaking for the court, said:

> "Whatever may be the duty imposed under Section 129 of the Constitution, that section is plainly directed to the General Assembly and not to the local governing bodies. It says, 'The General Assembly shall establish and maintain an efficient system of public free schools throughout the State.' * * * "

In Harrison v. Day, 200 Va. 439, 106 S.E.2d 636 (1959), the Supreme Court of Appeals held that Section 129 of the Virginia Constitution is still in the organic law (of Virginia) and must be complied with. The court further stated in its opinion that Section 129

> " * * * requires the State to 'maintain an efficient system of public free schools throughout the State.' (Emphasis included.) That means that the State must support such public free schools in the State as are necessary to an efficient system, including those in which the pupils of both races are compelled to be enrolled and taught together, however unfortunate that situation may be."

The court further stated that the provisions of certain appropriation acts (then under consideration by that court) violated Section 129 of the Constitution in that they removed from the public school system any schools in which pupils of the two races are mixed and made

no provision for the support and maintenance of said schools as a part of the system.

From this decision it would appear that the Constitution of Virginia imposes a mandatory duty to establish and maintain an efficient system of public schools throughout the state, and that the state may not remove from the system schools in which the races are mixed.

Article IX of the Constitution of Virginia, embracing the subjects of Education and Public Instruction, contemplates that moneys for the establishment and maintenance of public free schools will be appropriated partly by the General Assembly and partly by the local governing units. (See Griffin v. Board of Supervisors of Prince Edward County, supra.) Other sections of that article provide for the appointment and duties of the Superintendent of Public Instruction, the powers and duties of the State Board of Education, and the creation of school districts and school trustees. Title 22 (Education) of the Code of Virginia, implements these constitutional provisions.

From a careful reading of the foregoing Virginia authorities, it would appear the local school boards have been given the responsibility by law of establishing, maintaining, and operating the school system along with the State Board of Education, Superintendent of Public Instruction and Division Superintendent of Schools. The Supreme Court of Appeals has so held.[8]

Thus it is clear the public schools of Prince Edward County are not under the sole control of the county.

This Court finds, and so holds, that the public schools of Virginia were established, and are being maintained, supported and administered in accordance with state law. These public schools are primarily administered on a statewide basis. A large percentage of the school operating funds is received from the state. The curriculums, school text

8. See Board of Supervisors of Chesterfield County et al. v. County School Board of Chesterfield County, supra.

books, minimum teachers' salaries, and many other school procedures are governed by state law.

Nevertheless the public schools of Prince Edward County have been closed for the past three years. This was accomplished by the refusal of the Board of Supervisors to levy taxes or appropriate money for the maintenance of public schools, all of which was in accord with the expressed policy of the Board of Supervisors in their attempt to avoid the requirements of the Brown decision. This action was taken with the full knowledge of the State Board of Education, the Superintendent of Public Instruction, the School Board of Prince Edward County, and the Division Superintendent.

In these circumstances true focus is not on the Board of Supervisors but on the above-named school officials, all of whom directly or indirectly are state officials. They cannot abdicate their responsibilities either by ignoring them or by merely failing to discharge them, whatever the motive may be. See Burton v. Wilmington Pkg. Authority, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961).

As the court said in Bush v. Orleans Parish School Board, D.C., 190 F.Supp. 861 (1960),

" * * * equality of opportunity to education through access to non-segregated public schools is a right secured by the Constitution of the United States to all citizens regardless of race or color against State interference. Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686. * * * accordingly, every citizen of the United States, by virtue of his citizenship, is bound to respect this constitutional right, and * * * all officers of the state, more especially those who have taken an oath to uphold the Constitution of the United States, including the governor, the members of the state legislature, judges of the state courts, and members of the local school boards, are under con-

stitutional mandate to take affirmative action to accord the benefit of this right to all those within their jurisdiction. U.S.Const. art. VI, cls. 2, 3; Cooper v. Aaron, 358 U.S. 1, 78 S.Ct. 1401, 3 L.Ed.2d 5."

■ And as the court said in Cooper v. Aaron, 358 U.S. 1, 78 S.Ct. 1401 (1958),

" 'Whoever, by virtue of public position under a State government, * * * denies or takes away the equal protection of the laws, violates the constitutional inhibition; and as he acts in the name and for the State, and is clothed with the State's power, his act is that of the State. This must be so, or the constitutional prohibition has no meaning.' Ex parte Virginia, 100 U.S. 339, 347 [25 L.Ed. 676]. Thus the prohibitions of the Fourteenth Amendment extend to all action of the State denying equal protection of the laws; whatever the agency of the State taking the action, see Virginia v. Rives, 100 U.S. 313 [25 L.Ed. 667]; Pennsylvania v. Board of Directors of City Trusts of Philadelphia, 353 U.S. 230 [77 S.Ct. 806, 1 L.Ed.2d 792]; Shelley v. Kraemer, 334 U.S. 1 [68 S.Ct. 836, 92 L.Ed. 1161]; or whatever the guise in which it is taken, see Derrington v. Plummer, [5 Cir.] 240 F.2d 922; Department of Conservation and Development v. Tate, [4 Cir.] 231 F. 2d 615."

Note also the following apt statement from Cooper v. Aaron:

"It is, of course, quite true that the responsibility for public education is primarily the concern of the States, but it is equally true that such responsibilities, like all other state activity, must be exercised consistently with federal constitutional requirements as they apply to state action. The Constitution created a government dedicated to equal justice under law. The Fourteenth Amendment embodied and emphasized that ideal. State support of

segregated schools through any arrangement, management, funds, or property cannot be squared with the Amendment's command that no State shall deny to any person within its jurisdiction the equal protection of the laws. The right of a student not to be segregated on racial grounds in schools so maintained is indeed so fundamental and pervasive that it is embraced in the concept of due process of law." See also James v. Almond, D.C., 170 F.Supp. 331, supra.

Counsel for the Board of Supervisors has seriously contended, however, that what the Board of Supervisors does, or does not do, is not state action; that the Board of Supervisors cannot be compelled to levy taxes or appropriate money for school purposes. The Supreme Court of Appeals in the recent Griffin case so held in re levying taxes and appropriating money for school purposes. That court did not, however, pass upon or consider any federal questions.

Counsel for the Prince Edward School Board and the Division Superintendent wholeheartedly supported the contention of the Board of Supervisors. No argument was tendered justifying the failure of those school officials in fulfilling or attempting to fulfill the responsibility imposed by law of establishing, maintaining, and operating a free public school system, except to state that the County School Board will establish and maintain public schools in Prince Edward County if funds are made available to it, all in strict accordance with the April 22, 1960 order of this Court.

The Attorney General of Virginia, counsel for the State Board of Education and Superintendent of Public Instruction, likewise, in the main, supported the position of the Board of Supervisors. No argument was presented justifying the failure of those state officials from attempting to fulfill the responsibilities reposed in them by the Constitution of Virginia of establishing a system of free public schools throughout the state, and as set forth in Board of Supervisors of Chesterfield County v. County School Board of Chesterfield County, supra.

■ The contention that the action and inaction of the foregoing state and county officials resulting in the closing of the Prince Edward County schools was a local action, beyond the purview of the Fourteenth Amendment, is not well taken. County has been defined [9] "as a body politic, or political subdivision of the state, created by the legislature for administrative and other public purposes." It is generally regarded as merely an agency or arm of the state government.

■ The United States Constitution recognizes no governing units except the federal government and the states. A contrary position would allow a state to evade its constitutional responsibilities by carve-outs of small units. At least in the area of constitutional rights, specifically with respect to education, a state can no more delegate to its subdivisions the power to discriminate than it can itself directly establish inequalities. "When a parish wants to lock its school doors, the state must turn the key. If the rule were otherwise, the great guarantee of the equal protection clause would be meaningless." [10]

James v. Almond, D.C., 170 F.Supp. 331 (1959), in discussing the validity of the closing of some of the City of Norfolk schools, also announces this same view. It said:

"While the State of Virginia, directly or indirectly, maintains and operates a school system with the use of public funds, or participates by arrangement or otherwise in the management of such a school system, no one public school or grade in Virginia may be closed to avoid the effect of the law of the land as interpreted by the Supreme Court, while the state permits other public

9. 20 C.J.S. County, p. 1300.

10. Hall v. St. Helena Parish School Board, D.C., 197 F.Supp. 649 (1961).

schools or grades to remain open at the expense of the taxpayers."

The court further said:

"We do not suggest that, aside from the Constitution of Virginia, the state must maintain a public school system. That is a matter for state determination."

 This Court holds that the public schools of Prince Edward County may not be closed to avoid the effect of the law of the land as interpreted by the Supreme Court, while the Commonwealth of Virginia permits other public schools to remain open at the expense of the taxpayers.

In the event the public schools of Prince Edward County are reopened and maintained in accordance with the order of this Court entered herein on the 22nd day of April, 1960, it will not be necessary to enter a more formal order. If, however, the said schools are not reopened prior to September 7, 1962, this Court will on that day consider any and all proposed orders tendered by counsel of record.

"*, * * When, notwithstanding their oath so to do, the officers of the state fail to obey the Constitution's command, it is the duty of the courts of the United States to secure the enjoyment of this right to all who are deprived of it by action of the state. Brown v. Board of Education, 349 U.S. 294, 299–301, 75 S.Ct. 753, 99 L.Ed. 1083." Bush v. Orleans Parish School Board, supra.

The School Board of Prince Edward County is herewith directed to complete plans for the admission of pupils in the elementary and high schools of the county without regard to race or color and to receive and consider applications to this end at the earliest practical date. The proposed plans should be submitted to all counsel of record not later than September 1, 1962, if possible, and to this Court on September 7, 1962.

The motion to substitute successor defendants is herewith granted.

The motion to dismiss the motion for further relief is herewith granted.

The motion to dismiss the injunction entered herein on November 16, 1961, and further extended March 26, 1962, is denied. The said injunction is effective only so long as the public schools of Prince Edward County remain closed.

Let copies of this memorandum be mailed forthwith to all counsel of record.