266 F.2d 507
 Ulysses ALLEN, an infant, by Hal Edward Allen, his father
and next friend, Roy Hicks, an infant, by C. W. Hicks, his
father and next friend, and McDarnold Bagley, an infant, by
P. H. Shepperson, his guardian and next friend, and Hal
Edward Allen, C. W. Hicks and P. H. Shepperson, Appellants,
v.
COUNTY SCHOOL BOARD OF PRINCE EDWARD COUNTY, VA., et al., Appellees.
 No. 7829.
 United States Court of Appeals Fourth Circuit.
 May 5, 1959.
 
 Oliver W. Hill, Richmond, Va. (Spottswood W. Robinson, III, Richmond, Va., on brief), for appellants.
 Archibald G. Robertson, Richmond, Va. and A. S. Harrison, Jr., Atty. Gen. of Virginia (Henry T. Wickham, Special Asst. to the Atty. Gen. of Virginia, W. C. Fitzpatrick, Farmville, Va., John W. Riely, T. Justin Moore, Jr., and Hunton, Williams, Gay, Moore & Powell, Richmond, Va., on brief), for appellees.
 Before SOPER and HAYNSWORTH, Circuit Judges, and THOMPSON, District judge.
 PER CURIAM.
 
 
 1
 This litigation, which looks to the desegregation of the races in the public schools of Prince Edward County, Virginia, began nearly eight years ago on May 23, 1951, when a class suit on behalf of a number of colored pupils of high school age was entered against the County School Board in the District Court below. Since that time the case has been continuously before the courts and the principle of desegregation has been firmly established, but no steps to bring it about in the County have been taken by the school authorities. The last order of the District Court, from which this appeal was taken, was issued November 26, 1958, and therein the School Board was directed to proceed promptly with the formulation of a plan of desegregation and to report the progress made in the formulation of the plan to the court on or before January 1, 1959.[1] But by the same order the school authorities were given seven additional years, until the beginning of the 1965 school year, to put the plan into operation unless the order should be modified in the meantime. This date was fixed because the judge was of the opinion that the School Board should have ten years from the second decision of the Supreme Court in Brown v. Board of Education on May 31, 1955 (349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083) in which to given effect to its mandate that the plaintiffs be admitted to the public schools of the County on a racially non-discriminatory basis with all deliberate speed.
 
 
 2
 The question on this appeal, in view of the proceedings which have already taken place, is whether this order of the District Court conforms to the requirements which the Supreme Court has laid down. The original complaint was based on the proposition that the segregation of the races in the public schools of a state is a violation of the Federal Constitution and upon the further ground that if segregation accompanied by equality of treatment is valid the facilities afforded the colored pupils in the public schools of Prince Edward County were grossly inferior to those furnished to the white pupils. In reply the School Board contended that segregation if properly administered is valid, but admitted that the facilities furnished Negro pupils were inferior and stated that prompt steps to bring about equality at an early date were being taken. After hearing the case the three-judge court rendered an opinion on March 7, 1952, in which it upheld the first defense in principle but ordered that the School Board pursue with diligence and dispatch their program to replace the old facilities furnished Negro pupils and remove the inequality. Davis v. County School Board of Prince Edward County, 103 F.Supp. 337.[2]
 
 
 3
 An appeal from this decision was taken to the Supreme Court of the United States and the case was one of the group which was decided by that Court in Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873, on May 17, 1954, and Brown v. Board of Education, 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083, on May 31, 1955. Thereby the decision of the three-judge court was reversed and the case was remanded for further proceedings as indicated above. Upon the remand the three-judge court, on July 18, 1955, ordered compliance with the mandate of the Supreme Court but found that it was impracticable to effect the change in the schools of the County for the school year beginning in September 1955, and retained jurisdiction for further consideration and action.[3]
 
 
 4
 Thereafter, on April 23, 1956, the plaintiffs moved the court to comply with the mandate of the Supreme Court as to the secondary schools of the County not later than the school term beginning September 1956. Accordingly, the three-judge court was reconvened but, since the constitutional questions involved in the case had been conclusively determined, it was ordered that the court be dissolved and that further proceedings in the case be directed by United States District Judge Hutcheson. 142 F.Supp. 616. In subsequent proceedings before the single District Judge, consideration was given to the plaintiffs' prayer for further relief and also to an answer of the defendants resisting such relief, and a motion of the defendants that the plaintiffs' case be dismissed on the ground that an adequate remedy had been furnished them by certain acts of the Legislature of Virginia, passed at its session of 1956, and praying that the three-judge court be reconvened to consider this new phase of the case.[4]
 
 
 5
 The District Judge disposed of these motions in an opinion filed on January 23, 1957, 149 F.Supp. 431, which was followed by an order of March 26, 1957, in which the decision on the motion of the plaintiffs for further relief was withheld with reservation to the plaintiffs of the right to renew the motion at a later date after the defendants had been afforded a reasonable time to effect a solution. By the same order the judge denied the motion of the defendants that a three-judge court be convened but declined to pass on the matters raised in the defendants' motion to dismiss.
 
 
 6
 An appeal was taken from this decision and it was reversed by this Court on November 11, 1957, 4 Cir., 249 F.2d 462, wherein the case was remanded to the District Court with direction to enter an order directing the defendants to make a prompt and reasonable start toward complying with the court's order enjoining discrimination on the ground of race or color in admitting children to the schools under the supervision of the County School Board. The attention of the District Court was called to the order passed by this court on December 31, 1956, in County School Board of Arlington County, Va. v. Thompson, 4 Cir., 240 F.2d 59, wherein an order enjoining the County School Board of Arlington County to begin the desegregation of the elementary schools of the County in the 1956-57 term and the high school in the 1957-58 term was approved. It was there pointed out that it had been two years since the first decision of the Supreme Court in Brown v. Board of Education and that the County School Board, despite repeated demands, had taken no steps to remove the requirement of segregation in the schools. In that case (at page 64) we said:
 
 
 7
 '* * * This was not 'deliberate speed' in complying with the law as laid down by the Supreme Court but was clear manifestation of an attitude of intransigence, which justified the issuance of the injunctions to dispel the misapprehension of school authorities as to their obligations under the law and to bring about their prompt compliance with constitutional requirements as interpreted by the Supreme Court.'
 
 
 8
 After this quotation from the Arlington County case we used the following language with respect to the delay of the school authorities of Prince Edward County (249 F.2d 462, at page 465) in the case now under consideration:
 
 
 9
 'In the case at bar the order entered on June 29, 1955, while finding that it was impracticable to place the schools on a mondiscriminatory basis before September 1955, enjoined the defendants 'from refusing on account of race or color to admit to any school under their supervision any child qualified to enter such school, from and after such time as the defendants may have made the necessary arrangements for admission of children to such school on a nondiscriminatory basis with all deliberate speed as required by the decision of the Supreme Court in this cause.' More than a year and a half had elapsed after the entry of this order, the school year of 1955-56 had come and gone, another school year had been entered, and no steps had been taken to comply with the order. The time had unquestionably come to say plainly to the defendants that they must comply without further delay.'
 
 
 10
 The response of the District Judge to this last decision of this court in the pending case was to allow the County School Board of Prince Edward County the additional period of seven years within which to integrate the schools of the county. So far as can be gleaned from the opinion of the District Judge, the reasons which guided him in prolonging the period of inactivity and deferring integration in the public schools until 1965 were the findings that racial relations in the County had deteriorated in a marked degree since the first decision of the Supreme Court in 1954 and that violence may be within the realm of probability if precipitate action is taken, and that it is against the interests of immature school children that they should be psychologically disturbed by such conditions. In the course of the opinion reference was made, with approval, to the decision of the District Judge in Aaron v. Cooper-- known as the Little Rock Case-- D.C., 163 F.Supp. 13, decided June 20, 1958, wherein a plan for gradual racial integration of public schools in Little Rock which had been adopted by the school board was suspended until the 1960-61 school year because of popular opposition marked by incidents of more or less serious violence against Negro students and their property. With this decision in mind the judge in the pending case reached the conclusion that the School Board of Prince Edward County might defer action until 1965.
 
 
 11
 The proceedings of the District Court outlined above and the total inaction of the School Board speak so loudly that no argument is needed to show that the last delaying order of the District Judge cannot be approved, and that it has become necessary for this Court to give specific directions as to what must be done. This becomes even more clear in view of the decision of the Supreme Court of the United States on September 29, 1958, in Cooper v. Aaron, 358 U.S. 1, 78 S.Ct. 1401, 3 L.Ed.2d 5, 19, wherein the order of the United States District Court for the Eastern District of Arkansas suspending the integration plan adopted by the local school board was reversed. The Supreme Court said, 358 U.S. at pages 16 and 17, 78 S.Ct. at page 1409:
 
 
 12
 'The constitutional rights of respondents are not to be sacrificed or yielded to the violence and disorder which have followed upon the actions of the Governor and Legislature. As this Court said some 41 years ago in an unanimous opinion in a case involving another aspect of racial segregation: 'It is urged that this proposed segregation will promote the public peace by preventing race conflicts. Desirable as this is, and important as is the preservation of the public peace, this aim cannot be accomplished by laws or ordinances which deny rights created or protected by the Federal Constitution.' Buchanan v. Warley, 245 U.S. 60, 81, 38 S.Ct. 16, 20, 62 L.Ed. 149. Thus law and order are not here to be preserved by depriving the Negro children of their constitutional rights. * * *
 
 
 13
 '* * * In short, the constitutional rights of children not to be discriminated against in school admission on grounds of race or color declared by this Court in the Brown case can neither be nullified openly and directly by state legislators or state executive or judicial officers, nor nullified indirectly by them through evasive schemes for segregation whether attempted 'ingeniously or ingenuously.' Smith v. State of Texas, 311 U.S. 128, 132, 61 S.Ct. 164, 166, 85 L.Ed. 84.'
 
 
 14
 We are advertent to the fact that the problems which confront a school board in a municipality are different from those which the school board must meet in a completely rural community such as Prince Edward County where the races are approximately equal in number. This difference, however, has already been given effect in the present instance. Other communities in the state have taken steps to meet the question and solve it, whereas in Prince Edward County the school authorities have taken no effective action whatsoever during the four years since the second decision in Brown v. Board of Education was rendered, and even today contemplate no action in the future. Under these circumstances it is incumbent upon this Court to take steps to give effect to the mandate of the Supreme Court of the United States.
 
 
 15
 The order of the District Court in the pending case will therefore be reversed and the case remanded with direction that the District Judge issue an order enjoining the defendants from any action that regulates or affects on the basis of color the admission, enrollment or education of the infant plaintiffs, or any other Negro children similarly situated, to the high schools operated by the defendants in the County; and requiring the defendants to receive and consider the applications of such persons for admission to the white high school of the County on a non-racial basis without regard to race or color; and to take immediate steps in this regard to the end that the applications be considered so as to permit the entrance of qualified persons into the white school in the school term beginning September 1959; and also requiring the School Board to make plans for the admission of pupils in the elementary schools of the County without regard to race and to receive and consider applications to this end at the earliest practical day. The order of the District Judge shall also provide that state laws as to the assignment of pupils to classes in the public schools of the County shall be observed so long as such laws do not cause discrimination based on race or color, and that the administrative remedies therein provided must be exhausted before application is made to the court for relief on the ground that its injunction is being violated; and the order shall further provide that the suit remain upon the docket of the court and that the court retain jurisdiction thereof for such further action as may be necessary, including the power to enlarge, reduce or otherwise modify the provisions of the decree.
 
 
 16
 The plaintiffs make the additional contention that they should be allowed as part of the costs of the original hearing certain sums expended by them for the employment of expert witnesses, the procurement of photographs and the additional cost of daily transcript of the testimony which the District Judge disallowed. So far as the expense of the expert testimony and the photographs is concerned, reference is made to the allowance of items of this character to the prevailing parties in various patent cases. In respect to these items, we think the judgment of the District Court should be affirmed. The case was an important one from the standpoint of both parties and the propriety of making a full presentation cannot be doubted. However, much of the expense of these items was incurred in order to show that the schools provided for the Negro pupils were inferior to the white schools and this charge was admitted in the answer of the defendants so that the expenses incurred, although useful, were hardly essential. We think, however, that the additional expense incurred by the plaintiffs for daily copy of the transcript of the testimony should be allowed. The proposal to have daily copy of the testimony was first made by the defendants, and it was well-nigh essential for the plaintiffs to try the case on an equal footing with their opponents. The ordinary costs of the transcript of the testimony are usually borne by the losing party and it would seem that the same rule should be applied in the case like the present, in which the parties agreed at the outset that daily copy should be provided. The judgment of the District Court will therefore be amended to make this additional allowance of costs to the plaintiffs. Let the mandate issue forthwith.
 
 
 17
 Reversed and remanded.
 
 
 
 [1]
 We were informed at the argument of this appeal that the County School Board has reported that it has employed an expert to advise it as to the situation in the schools of the County
 
 
 [2]
 A new building for Negro pupils has since been erected
 
 
 [3]
 At this time an intervening complaint was filed in the case by the parents of Negro children of high school age which adopted all of the allegations of the original complaint and pointed out that they had not completed their course of instruction in the public elementary schools when the suit was filed
 
 
 [4]
 The acts of the Legislature of Virginia of 1956 relating to the public schools of the state were considered by a three-judge judge court in James v. Almond, D.C.E.D.Va., 170 F.Supp. 331