Mr. Justice Black
 

 delivered the opinion of the Court.
 

 This litigation began in 1951 when a group of Negro school children living in Prince Edward County, Virginia, filed a complaint in the United States District Court for the Eastern District of Virginia alleging that they had been denied admission to public schools attended by white children and charging that Virginia laws requiring such school segregation denied complainants the equal protec
 
 *353
 
 tion of the laws in violation of the Fourteenth Amendment. On May 17, 1954, ten years ago, we held that the Virginia segregation laws did deny equal protection.
 
 Brown
 
 v.
 
 Board of Education,
 
 347 U. S. 483 (1954). On May 31, 1955, after reargument on the nature of relief, we remanded this case, along with others heard with it, to the District Courts to enter such orders as “necessary and proper to admit [complainants] to public schools on a racially nondiscriminatory basis with all deliberate speed . . . .”
 
 Brown
 
 v.
 
 Board of Education,
 
 349 U. S. 294, 301 (1955).
 

 Efforts to desegregate Prince Edward County’s schools met with resistance. In 1956 Section 141 of the Virginia Constitution was amended to authorize the General Assembly and local governing bodies to appropriate funds to assist students to go to public or to nonsectarian private schools, in addition to those owned by the State or by the locality.
 
 [1]
 
 The General Assembly met in special session and enacted legislation to close any public schools where white and colored children were enrolled together, to cut off state funds to such schools, to pay tuition grants to children in nonsectarian private schools, and to extend state retirement benefits to teachers in newly created private schools.
 
 [2]
 
 The legislation closing mixed schools and cutting off state funds was later invalidated by the Supreme Court of Appeals of Virginia, which held that these laws violated the Virginia Constitution.
 
 Harrison
 
 v.
 
 Day,
 
 200 Va. 439, 106 S. E. 2d 636 (1959). In April 1959 the General Assembly abandoned “massive resistance” to desegregation and turned instead to what was
 
 *354
 
 called a “freedom of choice” program. The Assembly-repealed the rest of the 1956 legislation, as well as a tuition grant law of January 1959, and enacted a new tuition grant program.
 
 [3]
 
 At the same time the Assembly repealed Virginia's compulsory attendance laws
 
 [4]
 
 and instead made school attendance a matter of local option.
 
 [5]
 

 In June 1959, the United States Court of Appeals for the Fourth Circuit directed the Federal District Court (1) to enjoin discriminatory practices in Prince Edward County schools, (2) to require the County School Board to take “immediate steps” toward admitting students without regard to race to the white high school “in the school term beginning September 1959,” and (3) to require the Board to make plans for admissions to elementary schools without regard to race.
 
 Allen
 
 v.
 
 County School Board of Prince Edward County,
 
 266 F. 2d 507, 511 (C. A. 4th Cir. 1959). Having as early as 1956 resolved that they would not operate public schools “wherein white and colored children are taught together,” the Supervisors of Prince Edward County refused to levy any school taxes for the 1959-1960 school year, explaining that they were “confronted with a court decree which requires the admission of white and colored children to all the schools of the county without regard to race or color.”
 
 [6]
 
 As a result, the county’s public schools did not
 
 *355
 
 reopen in the fall of 1959 and have remained closed ever since, although the public schools of every other county in Virginia have continued to operate under laws governing the State’s public school system and to draw funds provided by the State for that purpose. A private group, the Prince Edward School Foundation, was formed to operate private schools for white children in Prince Edward County and, having built its own school plant, has been in operation ever since the closing of the public schools. An offer to set up private schools for colored children in the county was rejected, the Negroes of Prince Edward preferring to continue the legal battle for desegregated public schools, and colored children were without formal education from 1959 to 1963, when federal, state, and county authorities cooperated to have classes conducted for Negroes and whites in school buildings owned by the county. During the 1959-1960 school year the Foundation’s schools for white children were supported entirely by private contributions, but in 1960 the General Assembly adopted a new tuition grant program making every child, regardless of race, eligible for tuition grants of $125 or $150 to attend a nonsectarian private school or a public school outside his locality, and also authorizing localities to provide their own grants.
 
 [7]
 
 The Prince Edward Board of Supervisors then passed an ordinance providing tuition grants of $100, so that each child attending the Prince Edward School Foundation’s schools received a total of $225 if in elementary school or $250 if in high school. In the 1960-1961 session the major source of financial support for the Foundation was in the indirect form of these state and county tuition grants, paid to children attending Foundation schools. At the same time, the County Board of Supervisors passed an ordinance allowing property tax credits up to 25% for
 
 *356
 
 contributions to any “nonprofit, nonsectarian private school” in the county.
 

 In 1961 petitioners here filed a supplemental complaint, adding new parties and seeking to enjoin the respondents from refusing to operate an efficient system of public free schools in Prince Edward County and to enjoin payment of public funds to help support private schools which excluded students on account of race. The District Court, finding that “the end result of every action taken by that body [Board of Supervisors] was designed to preserve separation of the races in the schools of Prince Edward County,” enjoined the county from paying tuition grants or giving tax credits so long as public schools remained closed.
 
 [8]
 

 Allen
 
 v.
 
 County School Board of Prince Edward County,
 
 198 F. Supp. 497, 503 (D. C. E. D. Va. 1961). At this time the District Court did not pass on whether the public schools of the county could be closed but abstained pending determination by the Virginia courts of whether the constitution and laws of Virginia required the public schools to be kept open. Later, however, without waiting for the Virginia courts to decide the question,
 
 [9]
 
 the District Court held that “the public schools of Prince Edward County may not be closed to avoid the effect of the law of the land as interpreted by the Supreme Court, while the Commonwealth of Virginia permits other public schools to remain open at the expense of the taxpayers.”
 
 Allen
 
 v.
 
 County School Board of Prince Ed~
 
 
 *357
 

 ward County,
 
 207 F. Supp. 349, 355 (D. C. E. D. Va. 1962). Soon thereafter, a declaratory judgment suit was brought by the County Board of Supervisors and the County School Board in a Virginia Circuit Court. Having done this, these parties asked the Federal District Court to abstain from further proceedings until the suit in the state courts had run its course, but the District Court declined; it repeated its order that Prince Edward’s public schools might not be closed to avoid desegregation while the other public schools in Virginia remained open. The Court of Appeals reversed, Judge Bell dissenting, holding that the District Court should have abstained to await state court determination of the validity of the tuition grants and the tax credits, as well as the validity of the closing of the public schools.
 
 Griffin
 
 v.
 
 Board of Supervisors of Prince Edward County,
 
 322 F. 2d 332 (C. A. 4th Cir. 1963). We granted certiorari, stating:
 
 [10]
 

 “In view of the long delay in the case since our decision in the
 
 Brown
 
 case and the importance of the questions presented, we grant certiorari and put the case down for argument March 30,1964, on the merits, as we have done in other comparable situations without waiting for final action by the Court of Appeals.” 375 U. S. 391, 392.
 

 For reasons to be stated, we agree with the District Court that, under the circumstances here, closing the Prince Edward County schools while public schools in all the other counties of Virginia were being maintained denied the petitioners and the class of Negro students they represent the equal protection of the laws guaranteed by the Fourteenth Amendment.
 

 
 *358
 
 I.
 

 Before reaching the substantial questions presented, we shall note several procedural matters urged by respondents in a motion to dismiss the supplemental amended complaint filed July 7, 1961 — ten years after this action was instituted. Had the motion to dismiss been granted on any of the grounds assigned, the result would have been one more of what Judge Bell, dissenting in the Court of Appeals, referred to as “the inordinate delays which have already occurred in this protracted litigation . . . .” 322 F. 2d, at 344. We shall take up separately the grounds assigned for dismissal.
 

 (a) It is contended that the amended supplemental complaint presented a new and different cause of action from that presented in the original complaint. The supplemental pleading did add new parties and rely in good part on transactions, occurrences, and events which had happened since the action had begun. But these new transactions were alleged to have occurred as a part of continued, persistent efforts to circumvent our 1955 holding that Prince Edward County could not continue to operate, maintain, and support a system of schools in which students were segregated on a racial basis. The original complaint had challenged racial segregation in schools which were admittedly public. The new complaint charged that Prince Edward County was still using its funds, along with state funds, to assist private schools while at the same time closing down the county’s public, schools, all to avoid the desegregation ordered in the
 
 Brown
 
 cases. The amended complaint thus was not a new cause of action but merely part of the same old cause of action arising out of the continued desire of colored students in Prince Edward County to have the same opportunity for state-supported education afforded to white people, a desire thwarted before 1959 by segre
 
 *359
 
 gation in the public schools and after 1959 by a combination of closed public schools and state and county grants to white children at the Foundation’s private schools. Rule 15 (d) of the Federal Rules of Civil Procedure plainly permits supplemental amendments to cover events happening after suit,
 
 [11]
 
 and it follows, of course, that persons participating in these new events may be added if necessary. Such amendments are well within the basic aim of the rules to make pleadings a means to achieve an orderly and fair administration of justice.
 

 (b) When this action was originally brought in 1951, it broadly charged that the constitution and laws of Virginia provided a state system of public schools which unconstitutionally segregated school children on the basis of color. This challenge was heard by a District Court of three judges as required by 28 U. S. C. § 2281. When in
 
 Brown
 
 we held the school segregation laws invalid as a denial of equal protection of the laws under the Fourteenth Amendment and remanded for the District Court to fashion a decree requiring abandonment of segregation “with all deliberate speed,” the three-judge court ceased to function, and a single district judge took over. Respondents contend that the single judge erroneously passed on the issues raised by the supplemental complaint and that we should now delay the case still further by vacating his judgment along with that of the Court of Appeals and remanding to the District Court for a completely new trial before three judges. We reject the contention. In
 
 Rorick
 
 v.
 
 Board of Comm’rs of Everglades Drainage Dist.,
 
 307 U. S. 208, 212 (1939), we said, in interpreting the three-judge statute (then § 266 of the
 
 *360
 
 Judicial Code of 1911, as amended, 28 U. S. C. (1934 ed.) § 380):
 

 “ ‘Despite the generality of the language' of that Section, it is now settled doctrine that only a suit involving ‘a statute of general application’ and not one affecting a ‘particular municipality or district’ can invoke § 266.”
 

 While a holding as to the constitutional duty of the Supervisors and other officials of Prince Edward County may have repercussions over the State and may require the District Court’s orders to run to parties outside the county, it is nevertheless true that what is attacked in this suit is not something which the State has commanded Prince Edward to do — close its public schools and give grants to children in private schools — but rather something which the county with state acquiescence and cooperation has undertaken to do on its own volition, a decision not binding on any other county in Virginia. Even though actions of the State are involved, the case, as it comes to us, concerns not a state-wide system but rather a situation unique to Prince Edward County. We hold that the single district judge did not err in adjudicating this present controversy.
 

 (c) It is contended that the case is an action against the State, is forbidden by the Eleventh Amendment, and therefore should be dismissed. The complaint, however, charged that state and county officials were depriving petitioners of rights guaranteed by the Fourteenth Amendment. It has been settled law since
 
 Ex parte Young,
 
 209 U. S. 123 (1908), that suits against state and county officials to enjoin them from invading constitutional rights are not forbidden by the Eleventh Amendment.
 

 (d) It is argued that the District Court should have abstained from passing on the issues raised here in order to await a determination by the Supreme Court of Appeals of Virginia as to whether the conduct complained
 
 *361
 
 of violated the constitution or laws of Virginia. The Court of Appeals so held, 322 F. 2d 332, and this Court has, in cases deemed appropriate, directed that such a course be followed by a district court or approved its having been followed.
 
 E. g., Railroad Comm’n of Texas
 
 v.
 
 Pullman Co.,
 
 312 U. S. 496 (1941);
 
 Louisiana Power & Light Co.
 
 v.
 
 City of Thibodaux,
 
 360 U. S. 25 (1959). But we agree with the dissenting judge in the Court of Appeals, 322 F. 2d, at 344-345, that this is not a case for abstention. In the first place, the Supreme Court of Appeals of Virginia has already passed upon the state law with respect to all the issues here.
 
 County School Board of Prince Edward County
 
 v.
 
 Griffin,
 
 204 Va. 650, 133 S. E. 2d 565 (1963). But quite independently of this, we hold that the issues here imperatively call for decision now. The case has been delayed since 1951 by resistance at the state and county level, by legislation, and by lawsuits. The original plaintiffs have doubtless all passed high school age. There has been entirely too much deliberation and not enough speed in enforcing the constitutional rights which we held in
 
 Brown
 
 v.
 
 Board of Education, supra,
 
 had been denied Prince Edward County Negro children. We accordingly reverse the Court of Appeals’ judgment remanding the case to the District Court for abstention, and we proceed to the merits.
 

 II.
 

 In
 
 County School Board of Prince Edward County
 
 v.
 
 Griffin,
 
 204 Va. 650, 133 S. E. 2d 565 (1963), the Supreme Court of Appeals of Virginia upheld as valid under state law the closing of the Prince Edward County public schools, the state and county tuition grants for children who attend private schools, and the county’s tax concessions for those who make contributions to private schools. The same opinion also held that each county had “an option to operate or not to operate public
 
 *362
 
 schools.” 204 Va., at 671, 133 S. E. 2d, at 580. We accept this case as a definitive and authoritative holding of Virginia law, binding on us, but we cannot accept the Virginia court’s further holding, based largely on the Court of Appeals’ opinion in this case, 322 F. 2d 332, that closing the county’s public schools under the circumstances of the case did not deny the colored school children of Prince Edward County equal protection of the laws guaranteed by the Federal Constitution.
 

 Since 1959, all Virginia counties have had the benefits of public schools but one: Prince Edward. However, there is no rule that counties, as counties, must be treated alike; the Equal Protection Clause relates to equal protection of the laws “between persons as such rather than between areas.”
 
 Salsburg
 
 v.
 
 Maryland,
 
 346 U. S. 545, 551 (1954). Indeed, showing that different persons are treated differently is not enough, without more, to show a denial of equal protection.
 
 Kotch
 
 v.
 
 Board of River Port Pilot Comm’rs,
 
 330 U. S. 552, 556 (1947). It is the circumstances of each case which govern.
 
 Skinner
 
 v.
 
 Oklahoma ex rel. Williamson,
 
 316 U. S. 535, 539-540 (1942).
 

 Virginia law, as here applied, unquestionably treats the school children of Prince Edward differently from the way it treats the school children of all other Virginia counties. Prince Edward children must go to a private school or none at all; all other Virginia children can go to public schools. Closing Prince Edward’s schools bears more heavily on Negro children in Prince Edward County since white children there have accredited private schools which they can attend, while colored children until very recently have had no available private schools, and even the school they now attend is a temporary expedient. Apart from this expedient, the result is that Prince Edward County school children, if they go to school in their own county, must go to racially segregated schools which, although
 
 *363
 
 designated as private, are beneficiaries of county and state support.
 

 A State, of course, has a wide discretion in deciding whether laws shall operate statewide or shall operate only in certain counties, the legislature “having in mind the needs and desires of each.”
 
 Salsburg
 
 v.
 
 Maryland, supra,
 
 346 U. S., at 552. A State may wish to suggest, as Maryland did in
 
 Salsburg,
 
 that there are reasons why one county ought not to be treated like another. 346 U. S., at 553-554. But the record in the present case could not be clearer that Prince Edward's public schools were closed and private schools operated in their place with state and county assistance, for one reason, and one reason only: to ensure, through measures taken by the county and the State, that white and colored children in Prince Edward County would not, under any circumstances, go to the same school. Whatever nonracial grounds might support a State’s allowing a county to abandon public schools, the object must be a constitutional one, and grounds of race and opposition to desegregation do not qualify as constitutional.
 
 [12]
 

 In
 
 Hall
 
 v.
 
 St. Helena Parish School Board,
 
 197 F. Supp. 649 (D. C. E. D. La. 1961), a three-judge District Court invalidated a Louisiana statute which provided “a means by which public schools under desegregation orders may be changed to 'private' schools operated in the same way, in the same buildings, with the same furnishings, with the same money, and under the same supervision as the public schools.”
 
 Id.,
 
 at 651. In addition, that statute also provided that where the public schools were “closed,” the school board was “charged with responsibility for furnishing free lunches, transportation, and grants-in-aid to the
 
 *364
 
 children attending the ‘private’ schools.”
 
 Ibid.
 
 We affirmed the District Court’s judgment invalidating the Louisiana statute as a denial of equal protection. 368 U. S. 515 (1962). While the Louisiana plan and the Virginia plan worked in different ways, it is plain that both were created to accomplish the same thing: the perpetuation of racial segregation by closing public schools and operating only segregated schools supported directly or indirectly by state or county funds. See
 
 Cooper
 
 v.
 
 Aaron,
 
 358 U. S. 1, 17 (1958). Either plan works to deny colored students equal protection of the laws. Accordingly, we agree with the District Court that closing the Prince Edward schools and meanwhile contributing to the support of the private segregated white schools that took their place denied petitioners the equal protection of the laws.
 

 III.
 

 We come now to the question of the kind of decree lecessary and appropriate to put an end to the racial discrimination practiced against these petitioners under authority of the Virginia laws. That relief needs to be quick and effective. The parties defendant are the Board of Supervisors, School Board, Treasurer, and Division Superintendent of Schools of Prince Edward County, and the State Board of Education and the State Superintendent of Education. All of these have duties which relate directly or indirectly to the financing, supervision, or operation of the schools in Prince Edward County. The Board of Supervisors has the special responsibility to levy local taxes to operate public schools or to aid children attending the private schools now functioning there for white children. The District Court enjoined the county officials from paying county tuition grants or giving tax exemptions and from processing applications for state tuition grants so long as the county’s public schools remained closed. We have no doubt of the power of the
 
 *365
 
 court to give this relief to enforce the discontinuance of the county’s racially discriminatory practices. It has long been established that actions against a county can be maintained in United States courts in order to vindicate federally guaranteed rights.
 
 E. g., Lincoln County
 
 v.
 
 Luning,
 
 133 U. S. 529
 
 (1890); Kennecott Copper Corp.
 
 v.
 
 State Tax Comm’n,
 
 327 U. S. 573, 579 (1946). The injunction against paying tuition grants and giving tax credits while public schools remain closed is appropriate and necessary since those grants and tax credits
 
 [13]
 
 have been essential parts of the county’s program, successful thus far, to deprive petitioners of the same advantages of a public school education enjoyed by children in every other part of Virginia. For the same reasons the District Court may, if necessary to prevent further racial discrimination, require the Supervisors to exercise the power that is theirs to levy taxes to raise funds adequate to reopen, operate, and maintain without racial discrimination a public school system in Prince Edward County like that operated in other counties in Virginia.
 

 The District Court held that “the public schools of Prince Edward County may not be closed to avoid the effect of the law of the land as interpreted by the Supreme Court, while the Commonwealth of Virginia permits other public schools to remain open at the expense of the taxpayers.”
 
 Allen
 
 v.
 
 County School Board of Prince Edward County,
 
 207 F. Supp. 349, 355 (D. C. E. D. Va. 1962). At the same time the court gave notice that it would later consider an order to accomplish this purpose if the public schools were not reopened by September 7, 1962. That day has long passed, and the schools are still closed. On remand, therefore, the court may find it necessary to consider further such an order. An order of this kind is within the court’s power if re
 
 *366
 
 quired to assure these petitioners that their constitutional rights will no longer be denied them. The time for mere “deliberate speed” has run out, and that phrase can no longer justify denying these Prince Edward County school children their constitutional rights to an education equal to that afforded by the public schools in the other parts of Virginia.
 

 The judgment of the Court of Appeals is reversed, the judgment of the District Court is affirmed, and the cause is remanded to the District Court with directions to enter a decree which will guarantee that these petitioners will get the kind of education that is given in the State’s public schools. And, if it becomes necessary to add new parties to accomplish this end, the District Court is free to do so.
 

 It is so ordered.
 

 Mr. Justice Clark and Mr. Justice Harlan disagree with the holding that the federal courts are empowered to order the reopening of the public schools in Prince Edward County, but otherwise join in the Court’s opinion.
 

 [1]
 

 Virginia tuition grants originated in 1930 as aid to children who had lost their fathers in World War I. The program was expanded until the Supreme Court of Appeals of Virginia held that giving grants to children attending private schools violated the Virginia Constitution.
 
 Almond
 
 v.
 
 Day,
 
 197 Va. 419, 89 S. E. 2d 851 (1955). It was then that Section 141 was amended.
 

 [2]
 

 Va. Code, §22-188.3
 
 et seq.;
 
 §51-111.38:1.
 

 [3]
 

 Acts, 1959 Ex. Sess., c. 53.
 

 [4]
 

 Va. Code, §§22-251 to 22-275.
 

 [5]
 

 Va. Code, §§22-275.1 to 22-275.25.
 

 [6]
 

 The Board’s public explanation of its June 3, 1959, refusal to appropriate money or levy taxes to carry on the county’s public school system was:
 

 “The School Board of this county is confronted with a court decree which requires the admission of white and colored children to all the schools of the county without regard to race or color. Knowing the people of this county as we do, we know that it is not possible to operate the schools of this county within the terms of that principle and, at the same time, maintain an atmosphere conducive to the educational benefit of our people.”
 

 [7]
 

 Va. Code, §§ 22-115.29 to 22-115.35.
 

 [8]
 

 On the question of the validity of state tuition grants, the court held that, as a matter of state law, such grants were not meant to be given in localities without public schools; therefore, the court enjoined the county from processing applications for state grants so long as public schools remained closed. 198 F. Supp., at 504.
 

 [9]
 

 The Supreme Court of Appeals of Virginia had, in a mandamus proceeding instituted by petitioners, held that the State Constitution and statutes did not impose upon the County Board of Supervisors any mandatory duty to levy taxes and appropriate money to support free public schools.
 
 Griffin
 
 v.
 
 Board of Supervisors of Prince Edward County,
 
 203 Va. 321, 124 S. E. 2d 227 (1962).
 

 [10]
 

 In the meantime, the Supreme Court of Appeals of Virginia had held that the Virginia Constitution did not compel the State to reopen public schools in Prince Edward County.
 
 County School Board of Prince Edward County
 
 v.
 
 Griffin,
 
 204 Va. 650, 133 S. E. 2d 565 (1963).
 

 [11]
 

 “Upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit him to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented.” Fed. Rules Civ. Proc. 15 (d).
 

 [12]
 

 “But it should go without saying that the vitality of these constitutional principles cannot be allowed to yield simply because of disagreement with them.”
 
 Brown
 
 v.
 
 Board of Education,
 
 349 U. S. 294, 300 (1955).
 

 [13]
 

 The county has, since the time of the District Court’s decree, repealed its tax credit ordinance.