Ralph STELL et al., Plaintiffs,

and

The United States of America,
Plaintiff-Intervenor,

v.

The BOARD OF PUBLIC EDUCATION FOR the CITY OF SAVANNAH AND the COUNTY OF CHATHAM et al., Defendants,

and

Darnell L. Brawner et al., Defendant-Intervenors.

Civ. A. No. 1316.

United States District Court,
S. D. Georgia,
Savannah Division.

Nov. 19, 1971.

**910**

Bobby L. Hill, Savannah, Ga. (Hill, Jones & Farrington) for plaintiffs.

Martin Buckley, Civil Rights Div., Washington, D.C., for plaintiff-intervenor.

Malcolm Maclean, Savannah, Ga. (Connerat, Dunn, Hunter, Houlihan, Maclean & Exley), for defendants.

Owen H. Page, Savannah, Ga., for defendant-intervenors.

### ORDER

LAWRENCE, Chief Judge.

At the recent special session of the General Assembly of Georgia an Act

was passed entitled the "Savannah-Chatham County Freedom of Choice School Assignment Law." It requires the local Board of Public Education to establish a system permitting parents to make a primary and alternate choice of schools for their children. So long as student capacity permits, "The Board will assign pupils to the school indicated as the primary choice by parents or guardians." The Act provides that pupil assignments on such basis will be made by the Board beginning with the second semester of the 1971–72 school year.

■ The Board has requested this Court to grant declaratory relief in the face of its "quandry of compliance with both federal law as enforced through the present desegregation plans and state law as evidenced by the [Freedom of Choice] statute . . . ." [1]

■ The answer to the Board is clear. Not only may it ignore the legislation in question but it is instructed to do so.

"This Constitution . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." United States Constitution, Article VI, Clause 2.

In United States v. Peters, 9 U.S. 115, 136, 3 L.Ed. 53, Chief Justice Marshall said: "If the legislatures of the several states may, at will, annul the judgments of the courts of the United States, and destroy the rights acquired under those judgments, the constitution itself becomes a solemn mockery; and the Nation is deprived of the means of enforcing its laws by the instrumentality of its own tribunals."

In 1954 the Supreme Court of the United States ruled that racial discrimination in public education violates the

1. A three-judge district court is not required to determine constitutionality of this state statute since the law is one of mere local application. Griffin v. County School Board of Prince Edward County, 337 U.S. 218, 84 S.Ct. 1226, 12 L.Ed.2d 256; Moody v. Flowers, 387 U.S. 97, 87 S.Ct. 1544, 18 L.Ed.2d 643; City of Cleveland v. United States, 323 U.S. 329, 65 S.Ct. 280, 89 L.Ed. 274.

Constitution of the United States. A long and unbroken succession of cases decided by that Court and by other federal courts during the intervening seventeen years since Brown v. Board of Education of Topeka, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 makes it clear that any law or regulation of a state, county or municipality requiring or furthering racial discrimination in the public schools violates the federal Constitution.[2]

The action to desegregate the Savannah-Chatham County School system was brought against the Board of Education in January, 1962, by various individual plaintiffs. The United States intervened as a plaintiff in November, 1965.

On May 26, 1971, the defendant Board moved for modification of the zone plan which I had approved on July 18, 1970, in order that it might "comply as nearly as practicable to the rulings of the Supreme Court in Swann v. Mecklenburg County, et seq." The plan presented by the School Board involved the complete desegregation of the secondary schools in the system except Cuyler Junior High. It requested a delay until April, 1972, for submission of a plan for desegregation of the elementary schools. Evidentiary hearings on the Board's motion

were held on June 18, and June 25, 1971. Meanwhile certain intervenors who opposed the plan were permitted to intervene and to become parties to the litigation.

On June 30th last I approved the Board's plan as to the secondary schools and directed it to report to me on August 5, 1971, as to progress in devising a desegregation plan for the elementary schools. Plaintiffs filed an appeal to the Fifth Circuit Court of Appeals and a motion for summary reversal on the ground that the desegregation plan should have covered *all* twelve grades. On August 3, 1971, that tribunal handed down an order withholding any ruling pending a report from this Court in respect to the Board's progress in formulating a plan for the elementary schools.

On August 5, 1971, I held a hearing in that connection. Thereafter, I reported to the Fifth Circuit Court of Appeals that more time was needed for the planning and implementation of an elementary school plan. On August 23rd that Court ordered me to require the Board "forthwith" to establish and implement a unitary elementary school system. See Stell v. Board of Public Education for the City of Savannah and the County of Chatham, 446 F.2d 904 (5th Cir. 1971).

2. Hall v. St. Helena Parish School Bd., 197 F.Supp. 649 (E.D.La.1961), aff'd, 368 U.S. 515, 82 S.Ct. 529, 7 L.Ed.2d 521 (1962); Goss v. Board of Educ., 373 U.S. 683, 83 S.Ct. 1405, 10 L.Ed.2d 632 (1963); Griffin v. County School Bd., 377 U.S. 218, 84 S.Ct. 1226, 12 L.Ed. 2d 256 (1964); Lee v. Macon County Bd. of Educ., 267 F.Supp. 458 (M.D. Ala.), aff'd, 389 U.S. 215, 88 S.Ct. 415, 19 L.Ed.2d 422 (1967); Green v. County School Bd., 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716 (1968); Poindexter v. Louisiana Financial Assistance Comm'n, 275 F.Supp. 833 (E.D.La.1967), aff'd, 389 U.S. 571, 88 S.Ct. 693, 19 L.Ed.2d 780 (1968); Swann v. Charlotte-Mecklenburg Bd. of Educ., 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554; Clemons v. Board of Educ., 228 F.2d 853 (6th Cir. 1956); Taylor v. Board of Educ., 294 F.2d 36 (2d Cir.), cert. denied, 368 U.S. 940, 82 S.Ct. 382, 7 L.Ed.2d 339 (1961); Hobson v. Hansen, 269 F.Supp. 401 (D.D.C.

1967), appeal dismissed, 393 U.S. 801, 89 S.Ct. 40, 21 L.Ed.2d 85 (1968); United States v. School District 151, 286 F. Supp. 786 (N.D.Ill.), aff'd, 404 F.2d 1125 (7th Cir. 1968); Brewer v. City of Norfolk, 397 F.2d 37 (4th Cir. 1968); Coppedge v. Franklin County Bd. of Educ., 273 F.Supp. 289 (E.D.N.C.1967), aff'd, 394 F.2d 410 (4th Cir. 1968); United States v. Board of Educ., 396 F.2d 44 (5th Cir. 1968); Board of Educ. v. Dowell, 375 F.2d 158 (10th Cir.), cert. denied, 387 U.S. 931, 87 S.Ct. 2054, 18 L.Ed.2d 993 (1967); Davis v. School District, 309 F.Supp. 734 (E.D.Mich. 1970), aff'd, 443 F.2d 573 (6th Cir. May 28, 1971); Spangler v. Pasadena City Bd. of Educ., 311 F.Supp. 501 (C.D.Cal. 1970). This catalogue of decisions is taken from Judge Weigel's order in Johnson, et al. v. San Francisco Unified School District et al., —— F.Supp. —— (N.D.Cal.1971).

I complied. On August 31st an order was entered directing the desegregation of all elementary schools on the basis of a plan which the Board members had discussed but which they could not and would not bring themselves to approve. There was no appeal by the Board from my order requiring immediate desegregation of the lower grade schools on a racial ratio basis with a considerable increase in busing. The Intervenors appealed, contending that the plan imposed was offensive to the permissive principles of Swann v. Charlotte-Mecklenburg Board of Education. On November 8th the answer came from the Fifth Circuit in ten words: "The District Court's order of August 31, 1971 is AFFIRMED." 450 F.2d 880.

The two orders filed by this Court during the past summer achieved (with the exception of one school) a completely unitary system. That is no more nor less than what the Fourteenth Amendment ordains. The "Savannah-Chatham County Freedom of Choice School Assignment Law" requires the local Board to revert to a system which the federal Constitution forbids—racially segregated schools. No matter in what light this legislation is viewed its obvious purpose, its ineluctable result, is to re-segregate the public schools of the system, to interfere with the constitutional obligations of the Board, and to annul the orders of this Court as well as the mandate of the Court of Appeals.

The freedom-of-choice system which prevailed during the 1969–70 school year was abandoned under the plan approved on July 18, 1970. That method of pupil assignment served merely to perpetuate *de jure* segregation of races and the vestiges thereof. The Supreme Court held in Green et al. v. County School Board of New Kent County et al., 391 U.S. 430, 440, 88 S.Ct. 1689, 20 L.Ed.2d 716 that the freedom-of-choice plan adopted by the defendant board in that case had failed to dismantle the dual system. It said that choice plans are permissible only where they offer "real promise of aiding a desegregation program to effectuate conversion of a state-imposed dual system to a unitary, non-racial system." *ibid.*, p. 440, 88 S.Ct. p. 1696.

It is difficult to conceive how anyone could suppose for one moment that a state legislature can, in effect, amend the Constitution of the United States as it is construed by the highest Court and nullify orders of federal courts enforcing the Equal Protection provision of the Fourteenth Amendment. Such may be the law of the land in Alice's *Wonderland*. It is not here.

A mere glance at North Carolina State Board of Education et al. v. Swann et al., 402 U.S. 43, 91 S.Ct. 1284, 28 L.Ed.2d 586 should convince all but the self-deluded that any such concept of constitutional law is the quintessence of hallucination and wishful thinking. There an Anti-Busing law of that State forbade the assignment of students on account of race for the purpose of creating racial ratios. The Supreme Court ruled that the law was a nullity, pointing out that it would "inescapably operate to obstruct the remedies granted by the District Court in the *Swann* case."

In 1970 an act was passed in Alabama limiting assignment of pupils to freedom-of-choice plans. The law required school administrators to be neutral on desegregation and prohibited assignment of pupils to achieve reduced or enlarged racial attendance. It permitted assignment of students to schools in the manner requested by parents. A three-judge federal court held that legislation conflicting with a court order drawing its authority from the Fourteenth Amendment is unconstitutional. "The supremacy clause of our compact of government will admit of no other result," said the Court. State of Alabama v.

United States, D.C., 314 F.Supp. 1319, 1323.

In 1970 the General Assembly of Georgia enacted almost identical legislation. See Ga.Code Anno. § 32–847. In 1970 I ruled from the bench at a hearing in the *Stell* case that the defendant School Board should proceed as though the freedom-of-choice law enacted that year by the General Assembly was non-existent. In Bivins v. Bibb County Board of Education (M.D.Ga., 331 F. Supp. 9, 1970) Judge Bootle enjoined a state court action in which an injunction was sought to require the local school board to comply with the law in question. The District Court alluded to the freedom-of-choice law but did not in terms hold it invalid. It cited the Alabama three-judge decision mentioned above. Stating that the Constitution is the supreme law of the land and that the obvious purpose and necessary result of the suit in the Superior Court suit was to interfere with the Board of Education in complying with orders of the district court mandated by the Court of Appeals for the Fifth Circuit, Judge Bootle enjoined the plaintiffs from proceeding further in the state court.[3]

It seems passing strange to me that anyone could conceive that a freedom-of-choice law affecting a single school district in Georgia could have any more vitality than similar state-wide legislation which clearly and concededly is void and unenforceable, as related to this case, under the Supremacy Clause of the federal Constitution. The defendant Board of Education is instructed to disregard the "Savannah-Chatham County Freedom of Choice School Assignment Law." It shall do nothing in the way of compliance with legislation which from the constitutional viewpoint amounts to nothing.

3. During the same year Judge Frank A. Hooper in the case of the Atlanta public school system ruled that the Georgia legislation was invalid without writing any opinion. It was that clear.