## 𝔡𝔦𝔠𝔥𝔪𝔬𝔫𝔡

### City of Emporia, Et Al. v. County of Greensville, Et Al.

May 25, 1972.

Record No. 7835.

Present, I'Anson, Carrico, Gordon, Harrison, Cochran and Harman, JJ.

*D. Dortch Warriner* (*John F. Kay, Jr.; Warriner, Outten, Barrett & Burr; Mays, Valentine, Davenport & Moore,* on brief), for appellants.

*H. Benjamin Vincent* (*F. Bert Pulley; Pulley and Rowe,* on brief), for appellees.

GORDON, J., delivered the opinion of the court.

This case is a companion to *City of Emporia* v. *County of Greensville* (Record No. 7836), decided today. 213 Va. 11, 189 S.E.2d 338.

The Town of Emporia became a city of the second class on July 31, 1967. Va. Code Ann. Title 15.1, Chapter 22 (Transition of Towns to Cities), §§ 15.1-978 -1010 (1964). On April 10, 1968, the Council and the School Board of the newly created City of Emporia and the Board of Supervisors and the School Board of the County of Greensville made a Contract, which is the subject of this suit.

The Contract provided that during its term, which expired July 31, 1971, the County would

"continue to provide public schools, health and welfare services through its boards and departments and necessary facilities for such to the citizens of the City of Emporia in the same manner as when the City was a town and to the same extent as provided to the citizens of the County."

In return, the Contract provided that the City would

"pay to the County as billed its proportionate share of the local cost of such services and the parties agree that the City's share is 34.26 percentum of the local cost of the County."

On October 1, 1969, the City of Emporia and its School Board brought this suit seeking a declaratory judgment that the Contract was illegal, null and void. The record shows by stipulation that the City paid the County an aggregate of $765,988.35 under the Contract during the period January 19, 1968-February 13, 1970. The record does not show the amounts paid after February 13, 1970.

By final decree entered March 12, 1971, the court held that the City was estopped to deny the validity of the Contract. The City appeals, contending that the Contract contravenes (1) § 133 of the Constitution of Virginia and Code § 22-93, (2) § 136 of the Constitution of Virginia, and (3) § 127 of the Constitution of Virginia.[1]

1

When Emporia became a city, the County owned and operated four schools located outside the city boundaries and three schools

---

[1] All references are to the Constitution of Virginia of 1902, as amended, not to the revised Constitution effective at noon, July 1, 1971.

located within the city boundaries. The Contract provided that until termination (which occurred July 31, 1971), the County would "continue to provide public schools . . . through its boards [the County School Board] . . . and necessary facilities for such to the citizens of the City of Emporia in the same manner as when the City was a town and to the same extent as provided to the citizens of the County".

The City attacks that provision as contravening § 133 of the Constitution, which provides:

> "The supervision of schools *in* each county and city shall be vested in a school board, to be composed of trustees to be selected in the manner, for the term and to the number provided by law. [Emphasis supplied.] . . .
> "* * *".

After oral argument, we requested counsel to file supplemental briefs directed to the question whether the word "in", first appearing in § 133 (italicized in the quotation appearing in the preceding paragraph), refers to "(i) public schools located within the boundaries of a city, such as the City of Emporia, or (ii) public schools owned and operated, or owned or operated, by a city, such as the City of Emporia".

In their supplemental briefs, counsel for both the County and the City rejected the interpretation set forth in clause (i) of the preceding paragraph. They agreed that the applicability of § 133 did not depend upon the physical location of schools.

Counsel for the County adopted in part the interpretation set forth in clause (ii). They contended that § 133 was directed to schools owned or operated by a county or city.

Counsel for the City rejected the interpretations set forth in both clauses (i) and (ii). They contended that under § 133, "responsibility over the public school education of City children [must be vested] in the City School Board". [2]

---

[2] The City's position, summarized in its supplemental brief, is: "The Question Presented gives three alternatives as possible answers. Each alternative deals with physical location, ownership or operation. We believe a fourth alternative more nearly reaches the issue in this case. We believe that Section 133 is concerned neither with physical location nor with ownership. It is concerned instead with the institution of public schools for counties and cities and the designation of the supervisory authority over such institutions. The Constitution in the case of the City of Emporia clearly vested such supervisory responsibility over the public school education of

In *County School Board of Prince Edward County* v. *Griffin,* 204 Va. 650, 133 S.E.2d 565 (1963), after considering the effect of § 133 and other sections of the Constitution, we concluded: "[T]he Constitution and laws of Virginia have given to its localities an option to operate or not to operate public schools". *Id.* at 670-71, 133 S.E.2d at 580.[3] It follows that notwithstanding § 133, a city can abdicate any responsibility for public education. So we must interpret § 133 as merely dictating, as its language indicates, that a city school board must supervise any school or school system established by it.

So the narrow question presented is whether the City established a school system under the Contract.[4] If so, the Contract violated § 133 because supervision of the system was not vested in the City School Board.

We do not interpret the Contract as providing for the City's establishment of a school system. Rather, the Contract was intended to afford the City a reasonable time to establish its system by providing for the interim education of its citizens through the system established by the County. We therefore hold that the Contract does not violate § 133.

■ The City also contends that the Contract contravenes Code § 22-93, which provides:

"**Establishment of public free school system.**—The city school board of every city shall establish and maintain therein a general system of public free schools in accordance with the requirements

City children in the City School Board. It just as clearly vested supervisory authority over the public school education of County children in the County School Board. Any construction of the section contrary to this would rob the words used by the framers of their plain and accepted meaning."

[3] *County School Board of Prince Edward County* v. *Griffin, supra,* was overruled by *Griffin* v. *County School Board of Prince Edward County,* 377 U.S. 218 (1964). But the Court pointed out: "The . . . opinion [of the Supreme Court of Appeals of Virginia] also held that each county had 'an option to operate or not to operate public schools.' 204 Va. at 671, 133 S.E.2d, at 580. We accept this case as a definitive and authoritative holding of Virginia law, binding on us, but we cannot accept the Virginia court's further holding, based largely on the Court of Appeals' opinion in this case, 322 F.2d 332, that closing the county's public schools under the circumstances of the case did not deny the colored school children of Prince Edward County equal protection of the laws guaranteed by the Federal Constitution." *Id.* at 229-30.

[4] In posing and discussing this question, for the purpose of argument we will assume, as counsel for the City contends, that the word "schools" in § 133 refers to school systems rather than physical structures.

of the Constitution and the general educational policy of the Commonwealth."

Va. Code Ann. § 22-93 (1969). The City's contention, as we understand it, is that the Contract contravened Code § 22-93 by providing for the education of citizens of the City through the County school system rather than through an independent system established and maintained by the City.[5]

As pointed out in *City of Emporia* v. *County of Greensville* (Record No. 7836), *supra* at 11-12, 189 S.E.2d at 339, the City instituted a separate suit to compel the County School Board to convey to the City School Board two schools located within the City. The bill of complaint filed in that suit recites, "[c]omplainants believe and therefore allege that the aforementioned properties [Greensville County High School and Emporia Elementary School, sought to be acquired by the City] are necessary to the City for the establishment of a separate public school system from that of the County for the education of school-age children living within the limits of the City of Emporia."

So the City intended to establish an independent school system and brought suit to acquire County schools to carry out that intent. Significantly, neither Code § 22-93 nor any other statute that has come to our attention specifies the time within which a newly created city shall establish an independent school system. And the Contract, instead of reflecting the City's intent to forego the establishment and maintenance of a public school system, reflected the City's intent to provide for the interim education of its citizens. We therefore reject the City's contention that the Contract contravened Code § 22-93.

2

██ Section 136 of the Constitution provided:

"Each county, city or town, if the same be a separate school district, and school district is authorized to raise additional sums by a tax on property, subject to local taxation, not to exceed in the aggregate in any one year a rate of levy to be fixed by law, to be apportioned and expended by the local school authorities of said counties, cities, towns and districts in establishing and maintaining

---

[5] For the purpose of argument we will assume, as counsel for the City contends, that this section imposes "a clear statutory duty ... on the City to establish and maintain in the City a public school system." (But see in this connection *County School Board of Prince Edward County* v. *Griffin, supra* at 660, 133 S.E. 2d at 572-73.)

such schools as in their judgment the public welfare may require; . . . . The boards of supervisors of the several counties, and the councils of the several cities and towns, if the same be separate school districts, shall provide for the levy and collection of such local school taxes."

Counsel for the City attacks the Contract as contravening § 136 on the following grounds, extracted from the opening brief:

"[I]t is a legislative function of the City Council to determine how much money shall be raised for school purposes and to levy taxes to provide such money. By entering into the contract of 10 April 1968, the Council has attempted to barter away the power to make this determination. It has agreed to pay 34.26 per centum of any amount that the County decides is necessary to operate schools or to expand or improve such schools. Thus it is the County Board of Supervisors, not the City Council, that determines, to a substantial extent the amount to be levied in Emporia."

The record does not show, however, whether the City levied a local school tax. Nor does the record show the source from which the City derived the funds that were paid to the County pursuant to the Contract. The record therefore does not support a holding that the City violated § 136. Accordingly, we reject this contention.

3

Section 127 of the Constitution provided:

"No city or town shall issue any bonds or other interest-bearing obligations for any purpose, or in any manner, to an amount which, including existing indebtedness, shall, at any time, exceed eighteen per centum of the assessed valuation of the real estate in the city or town subject to taxation, as shown by the last preceding assessment for taxes . . . .
" * * * ".

Relying primarily on *Board of Supervisors of Fairfax County* v. *Massey,* 210 Va. 253, 169 S.E.2d 556 (1969), the City contends that the Contract contravened § 127. In *Massey,* we refused to issue a writ of mandamus to compel a city manager to execute a contract

creating city debt when it was not known whether the aggregate amount would exceed the debt permitted by § 127.

This case differs from *Massey*. The petitioners in *Massey* sought an extraordinary writ to compel the execution of a contract, whereas the City in this case sought a declaratory judgment that an executed and partly-performed contract was illegal.

When the final decree in this case was entered on March 12, 1971, less than five months before the terminal date of the Contract, the City had shown only the amounts paid by it to the County during the period January 19, 1968-February 13, 1970. The City brought forth nothing to show the aggregate amount already paid up to March 12, 1971 or estimated to be paid during the remaining term of the Contract.[6] And the record shows nothing about the assessed value of the real estate in the City of Emporia.

In view of the void in the record respecting the alleged violation of § 127, we cannot issue a declaratory judgment holding unconstitutional the Contract, which was duly authorized by the City Council. "[A]ll statutes and ordinances are presumed to be constitutional, and . . . if there is any doubt such doubt should be resolved in favor of their constitutionality". *Town of Ashland* v. *Board of Supervisors of Hanover County*, 202 Va. 409, 416, 117 S.E.2d 679, 684 (1961). In view of this holding, we need not decide whether the Contract provides for payment for services rendered, rather than creation of debt within the meaning of § 127. *See Board of Supervisors of Fairfax County* v. *Massey*, 210 Va. 680, 173 S.E.2d 869 (1970).

*Affirmed.*

---

[6] Counsel for the City points out that the Contract obligated the City to pay not only its proportionate share of the cost of school services, but also its proportionate share of capital improvements or additional facilities. But the record does not show that any capital improvements were made or that any additional facilities were constructed.