Submitted on record and briefs March 27, affirmed April 15, 1974

## DARRELL D. ROOK (No. 81212), *Appellant, v.*
## CUPP ET AL, *Respondents.*

521 P2d 10

James D. Vick, Salem, for appellant.

Lee Johnson, Attorney General, W. Michael Gillette, Solicitor General, and Scott McAlister, Assistant Attorney General, Salem, for respondents.

Before SCHWAB, Chief Judge, and LANGTRY and FORT, Judges.

LANGTRY, J.

Petitioner was refused relief in a habeas corpus proceeding.[1] He was seeking certain privileges which were afforded to prisoners in general that were not afforded him as an inmate of the Oregon State Penitentiary. Specifically, the privileges that he was seeking were access to hard-covered library books, general canteen privileges, rehabilitative programs called "cell studies," hobby crafts and musical instruments, more liberal yard exercise periods, and a transfer to the Oregon State Correctional Institution.

Petitioner is an inmate of the Oregon State Penitentiary and at his own request is being held in the isolation and segregation unit of the penitentiary. The reason for his request therefor is expressed in his own testimony at the hearing:

"A The rumor was going around the penitentiary that I was going to snitch.

"* * * * *

---

[1] The question of whether habeas corpus is a proper proceeding to raise the petitioner's alleged cause was not raised or assigned as error.

"A    I had a hassle with a guy up here at the—
February of '72 and I figured it would end there,
but it didn't, so I got caught with a knife April 6th.

"Q    What year?

"A    '72. Placed in segregation unit. I went out
in January of — first of January '73, and people
were still after me, so I went back to the protective
custody.

"Q    How did you know people were still after
you?

"A    They told me next time I go to the yard
to take my Chev [sic], which means my knife.

"*    *    *    *    *

"Q    Do you fear for your life, if you are de-
nied this security unit?

"A    Yes."

Petitioner is serving life sentences for each of three
first degree murder convictions, a five-year sentence
for larceny in a building and three years for attempted
grand larceny.

Testimony at the hearing in circuit court was that
approximately 20 out of 925 inmates are being held
in protective segregation at the penitentiary; that
other inmates who present severe security risks are
confined in other tiers of the segregation and isolation
unit; that the two groups do not intermingle, but see
each other; and that no other unit is available in which
to place the two groups or either of them. Sometimes
for protective custody prisoners are transferred to
the Oregon State Correctional Institution. The peti-
tioner was not transferred according to the Assistant
Superintendent of the penitentiary

"*    *    *    [b]ecause of the considerable amount
of time that he is serving [,] because of his
crime [,] and because we had no documentation to
support his request for protection, * * * for those

three reasons, primarily the first two, the super-intendent would not consider making the recom-mendation."

Although unlimited hard-bound library books cannot be had for the asking in the segregation unit, the testimony indicated that as many as 15 hard-bound textbooks were in the cell of a particular in-mate of that status at one time and that he could study there although he could not have the access to study courses that he would have in the general population of the prison. Evidence was that bringing of hard-bound library books indiscriminately in the segregation unit had resulted in destruction of the books. Unlimited canteen privileges were denied segregation prisoners because of the difficulty such supplies presented in the type of shakedowns that were necessarily perform-ed in segregation and isolation. Evidence was produced that petitioner is allowed yard exercise privileges, but because of his status, there is not time for as long periods as the general prison population is afforded. Petitioner argues that these reasons for denying him the privileges generally afforded other prisoners have no rational basis. On the evidence the trial court made findings and conclusions that amount to a finding that they do have a rational basis, for the court found that where some persons must be isolated to protect them from others, there is nothing cruel or unusual about the confinement. The trial court particularly noted that petitioner was in a status he requested him-self.

■ Petitioner's own conduct, regardless of the rea-sons underlying it, brought about placement in a sep-arate class. By his choice petitioner obtained a separate privilege—that of protection from the gen-

eral prison population which he feared. Having placed himself in that class, he must accept the privileges afforded to people in that class, not those privileges of the general prison population, so long as they bear a reasonable relationship to acceptable management practices of the institution. In *Griffin v. School Board,* 377 US 218, 230, 84 S Ct 1226, 12 L Ed 2d 256 (1964), the United States Supreme Court said:

"* * * Indeed, showing that different persons are treated differently is not enough, without more, to show a denial of equal protection. * * * It is the circumstances of each case which govern * * *."

In addition to the reasons given for the curtailment of privileges related above, the prison management personnel who testified said that reduction of privileges of those in segregation and isolation by their very nature encouraged security inmates to work their way back into the general prison population. If protective custody inmates were given privileges substantially more attractive than those given to prisoners in isolation for disciplinary reasons, inasmuch as they are all located in the same group of cell tiers, the double standard obvious to the eye between the two classes so located could create severe disciplinary problems. All of the reasons given lead us to conclude that there is a rational basis behind the rules with which petitioner is required to conform. He is not denied equal protection under the Constitution of the United States or Oregon or inflicted with more burdensome punishment than the law allows.

Affirmed.