**HABITAT EDUCATION CENTER, INC., et al., Plaintiffs,**

v.

**Abigail KIMBELL, Chief, U.S. Forest Service,[1] et al., Defendants.**

**Nos. 03–C–1023, 04–C–0254.**

United States District Court, E.D. Wisconsin.

June 5, 2008.

---

1. I have amended the caption to name as defendants the successors to the officials that plaintiffs originally named. *See* Fed.R.Civ.P. 25(d).

Bradley D. Klein, Howard A. Learner, Kathrine B. Dixon, Chicago, IL, Brady C. Williamson, Godfrey & Kahn SC, Madison, WI, Sean O. Bosack, Godfrey & Kahn SC, Milwaukee, WI, for Plaintiffs.

Pamela S. West, United States Department of Justice (DC), Environment & Natural Resources Div., Washington, DC, for Defendants.

## DECISION AND ORDER

LYNN ADELMAN, District Judge.

### I. BACKGROUND

In 2003 and 2004, plaintiff Habitat Education Center, Inc., a citizen's organization engaged in forest, wildlife, and natural resource protection, some of its members and other related entities and individuals brought three actions under the Administrative Pro-

cedure Act ("APA"), 5 U.S.C. § 551 *et seq.,* in this District against defendants, the Chief of the United States Forest Service, the Secretary of the United States Department of Agriculture and other public officials and entities. Plaintiffs challenged defendants' approvals of timber projects in the Chequamegon–Nicolet National Forest ("CNNF") in northern Wisconsin, alleging that defendants violated the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq.,* the National Forest Management Act ("NFMA"), 16 U.S.C. §§ 1600–1687, and other statutes. The actions challenged the "Northwest Howell" project (Case No. 03–C–1023), the "Cayuga" project (Case No. 03–C–1024), and the "McCaslin" project (Case No. 04–C–0254).

In 2005, I found that with respect to each of the three projects, defendants violated NEPA by preparing insufficient Environmental Impact Statements ("EISs").[2] I enjoined the projects until defendants produced EISs that complied with NEPA, and remanded the matters to the Forest Service for further proceedings. *See Habitat Educ. Ctr., Inc. v. Bosworth (Habitat III),* 381 F.Supp.2d 842 (E.D.Wis.2005) (Cayuga); *Habitat Educ. Ctr., Inc. v. Bosworth (Habitat II),* 363 F.Supp.2d 1090 (E.D.Wis.2005) (Northwest Howell); *Habitat Educ. Ctr., Inc. v. Bosworth (Habitat I),* 363 F.Supp.2d 1070 (E.D.Wis.2005) (McCaslin).

On January 18, 2007, defendants filed a "Notice of Compliance" on the dockets of the McCaslin and Northwest Howell cases, indicating that the Forest Service had completed supplemental EISs ("SEISs") addressing the deficiencies I found in the original EISs.[3] In reliance on the SEISs, in 2006, defendants issued new Records of Decision ("RODs"), reapproving the McCaslin and Northwest Howell projects.[4] The 2006 RODs superceded the 2003 RODs, which approved the McCaslin and Northwest Howell projects based on the EISs that I found to be deficient.

Following the preparation of the new SEISs and RODs, defendants filed motions to lift the injunctions relating to the McCaslin and Northwest Howell projects, arguing that they had complied with NEPA. Plaintiffs oppose the motions on the ground that the SEISs do not satisfy NEPA. Plaintiffs also move for leave to file supplemental complaints asserting claims against the 2006 RODs under the APA. I address these motions below.[5]

## II. DISCUSSION

### A. Defendants' Motions to Lift Injunctions

Defendants move to lift the McCaslin and Northwest Howell injunctions pursuant to Fed.R.Civ.P. 60(b)(5) (2007), which provides:

**(b) Grounds for Relief from a Final Judgment, Order, or Proceeding.** On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

. . . .

(5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable[.]

Rule 60(b)(5) lists three independent grounds for relief from a final judgment or order: (1)

---

2. An EIS is a detailed written statement that, pursuant to NEPA, federal agencies must prepare before they approve an action that will have a significant effect on the environment. An adequate EIS will demonstrate that the agency took a hard look at the environmental consequences of a proposed action, explain why the agency settled on the particular plan approved, and provide the public with the environmental information needed to participate in the agency's decisionmaking process. *See, e.g., Simmons v. U.S. Army Corps of Eng'rs,* 120 F.3d 664, 666 (7th Cir.1997).

3. The Cayuga project is apparently still in its administrative phases.

4. NEPA regulations require defendants to certify their final approval of a major federal action by issuing a ROD. *See Highway J Citizens Group v. United States Dep't of Transp.,* 456 F.3d 734, 737 n. 6 (7th Cir.2006).

5. Because the parties' motions in the McCaslin and Northwest Howell cases are nearly identical, I will address them in this decision and order. However, the cases remain separate actions.

the judgment has been satisfied, released or discharged; (2) the judgment is based on an earlier judgment that has been reversed or vacated; and (3) applying the judgment prospectively is no longer equitable. Defendants do not state which ground they rely on, sometimes asserting that they have satisfied the judgments and other times that applying them prospectively would be inequitable. Thus, they apparently rely on the first and third prongs of Rule 60(b)(5).

However, defendants' motions do not fit neatly into any of the grounds for relief enumerated in Rule 60(b)(5). *See Sierra Club v. Mason,* 365 F.Supp. 47, 49 (D.Conn. 1973) (stating that "[a]n injunction prohibiting a federal project until the filing of an impact statement does not precisely fit the models to which ... Rule 60(b)(5) [is] directed"). Indeed, defendants technically are not seeking "relief" from the orders containing the injunctions. Each judgment states that the applicable project "is enjoined until such time as the Forest Service produces an Environmental Impact Statement that complies with the requirements of the National Environmental Policy Act." (Northwest Howell Docket # 98; McCaslin Docket # 80.) The judgments thus contemplate that if defendants produce NEPA compliant EISs, they can proceed with the projects without first having the injunctions modified or dissolved. In other words, once defendants have NEPA compliant EISs in hand, the injunctions, by their own terms, have no further effect.

In the present motions, defendants claim that they have, in fact, produced NEPA compliant EISs. If this is true, defendants may proceed with the projects without violating the injunctions. However, if the SEISs do not comply with NEPA, but defendants proceed with the projects, I could find defendants in contempt for violating the injunctions. Because I must determine whether

defendants have produced NEPA compliant EISs,[6] defendants appropriately seek my approval before commencing the projects. Thus, defendants' motions are most accurately characterized as requests for declarations that the SEISs comply with NEPA. The motions seek to eliminate the possibility that I would determine that the SEISs do not comply with NEPA and as a result find defendants in contempt for proceeding with the projects. Thus, I conclude that defendants are making an argument under the third prong of Rule 60(b)(5), namely that applying the judgments, and their possibility of contempt, prospectively is no longer equitable.

### 1. Jurisdiction

■ As explained, defendants seek to dissolve the injunctions because they believe they have produced NEPA compliant EISs, the SEISs. Paradoxically, however, defendants also argue that I lack jurisdiction to consider whether the SEISs comply with NEPA. They seem to suggest that because they produced SEISs, I have been divested of jurisdiction to consider whether the SEISs comply with NEPA. However, the injunctions state that they shall remain in effect until defendants produce NEPA compliant EISs. By using this language, I obviously intended the injunctions to remain in effect until I determined that defendants had complied with NEPA. Courts determine whether parties have complied with their orders, parties do not. Thus, to determine whether to dissolve the injunctions, I must decide whether the SEISs comply with NEPA.

What defendants characterize as a challenge to jurisdiction is actually an argument about procedure, namely an argument that to challenge the SEISs, plaintiffs must file new lawsuits under the APA challenging the 2006 RODs.[7] The APA permits judicial review of a "final agency action," see 5 U.S.C. §§ 702,

---

6. In the judgments, I expressly retained jurisdiction to enforce the injunctions. Even if I had not, I have inherent authority to enforce or modify a permanent injunction. *McCall–Bey v. Franzen,* 777 F.2d 1178, 1183 (7th Cir.1985).

7. I have subject matter jurisdiction over the present matters pursuant to 28 U.S.C. § 1331 because the suits raise federal questions—namely, compliance with NEPA. *Blagojevich v. Gates,* 519

F.3d 370, 371 (7th Cir.2008). Further, sovereign immunity (which has nothing to do with subject matter jurisdiction, *id.*) is no obstacle because 5 U.S.C. § 702 waives sovereign immunity from suits seeking prospective relief against federal agencies. *Id.* Defendants inaccurately refer to "the Court's APA jurisdiction" (e.g., Reply Br. at 6). However, the APA is not the source of my subject matter jurisdiction, § 1331 is.

704, which, in a NEPA case, is usually the ROD approving the project. When plaintiffs originally filed suit against the McCaslin and Northwest Howell projects, the "agency actions" at issue were the 2003 RODs for each project. In 2006, however, defendants prepared SEISs and adopted superceding RODs. Thus, the decisions approving the McCaslin and Northwest Howell projects are now embodied in the 2006 RODs. According to defendants, plaintiffs cannot challenge the 2006 RODs in the present lawsuits. I disagree. The existence of new RODs prepared for the purpose of complying with my decisions in the present suits does not mean that plaintiffs must file new lawsuits to contest whether defendants' efforts have been successful. To require plaintiffs to file new suits under these circumstances would engender multiplicitous litigation and make little sense. The APA does not require such a result. It authorizes judicial review of final agency action, and the 2006 RODs constitute such actions. Defendants cite no authority, and I have found none, that would require a plaintiff to file a fresh lawsuit to challenge a final agency action when the action is no more than the latest iteration of an earlier action that is the subject of a pending suit.[8] Thus, I conclude that plaintiffs may challenge the 2006 RODs in the present suits.

### 2. Merits

Defendants do not presently make the substantive argument that the SEISs comply with NEPA. Thus, the parties have not briefed the question, and I will give them time to do so, after which I will reconsider defendants' motions to lift the injunctions. For now, however, I will deny the motions without prejudice.

### B. Plaintiffs' Motions to File Supplemental Complaints

■ In addition to contending that the SEISs do not comply with the injunctions, plaintiffs argue that the 2006 RODs violate federal law in ways that the 2003 RODs did not. Thus, they seek to file supplemental complaints in the McCaslin and Northwest Howell actions. Defendants reiterate their contention that plaintiffs cannot challenge the 2006 RODs without filing fresh lawsuits. I again reject this argument.

■ Fed.R.Civ.P. 15(d) provides as follows:

> **(d) Supplemental Pleadings.** On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense. The court may order that the opposing party plead to the supplemental pleading within a specified time.

A supplemental pleading differs from an amended pleading in two respects. While an amended pleading relates to matters that occurred prior to the filing of the original pleading and entirely replaces such pleading, a supplemental pleading addresses events occurring subsequent to the initial pleading and adds to such pleading. 6A Charles A. Wright, Arthur R. Miller and Mary Kay Kane, *Federal Practice & Procedure* § 1504, at 183–84 (2d ed.1990). A supplemental pleading promotes as complete an adjudication of the dispute between the parties as possible. 6A Wright et al., *supra*, § 1504, at 177. It is a tool of "judicial economy and convenience," *Keith v. Volpe*, 858 F.2d 467, 473 (9th Cir.1988), which serves to "avoid the cost, delay and waste of separate actions which must be separately tried and prosecuted," *New Amsterdam Cas. Co. v. Waller*, 323

---

**8.** Defendants cite *Fund for Animals v. Norton*, 390 F.Supp.2d 12, 14–16 (D.D.C.2005), in which the court vacated an agency's action based on NEPA non-compliance and remanded the case to the agency for further proceedings. The court found that if the plaintiffs wanted to challenge the agency's actions post-remand, they would have to file a fresh lawsuit. Importantly, however, the *Fund for Animals* court did not issue any injunctions, it only vacated the agency action. When the court vacated the action, it ended the case. In the present case, I issued injunctions and have continuing jurisdiction to enforce and modify them. At issue now is whether defendants have complied with the injunctions. This issue arises under the prior judgments and should be litigated within the prior suits.

F.2d 20, 28–29 (4th Cir.1963). Thus, when a supplemental pleading facilitates the efficient administration of justice, a court should allow it. *Griffin v. County Sch. Bd. of Prince Edward County,* 377 U.S. 218, 226–27, 84 S.Ct. 1226, 12 L.Ed.2d 256 (1964).

A court should permit a supplemental pleading when a party wishes to bring up events occurring subsequent to the original pleading that relate to a claim or defense presented in the original pleading. 3 James Wm. Moore, *Moore's Federal Practice* § 15.30 (3d ed.2008). Such events need not arise out of the same transaction or occurrence as the original claim, so long as they bear "some relationship" to the original pleading. *Id.* Here, since the 2006 RODs are simply new phases in the McCaslin and Northwest Howell projects, they bear more than "some relationship" to plaintiffs' original pleadings. To force plaintiffs to file new lawsuits to litigate what are essentially continuations of their original suits would waste judicial resources.

Defendants also argue that I lack jurisdiction to permit plaintiffs to file post-judgment pleadings because plaintiffs have not moved to set aside or vacate the judgments pursuant to Federal Rule of Civil Procedure 59(e) or 60(b). For support, defendants rely on cases from this Circuit holding that a plaintiff may not file an amended pleading after the court has dismissed the action (not merely the complaint) for failure to state a claim upon which relief may be granted unless the plaintiff first brings, and the court grants, a motion under Rule 59(e) or 60(b). *See Camp v. Gregory,* 67 F.3d 1286, 1289–90 (7th Cir. 1995); *Paganis v. Blonstein,* 3 F.3d 1067, 1072–73 (7th Cir.1993); *Figgie Int'l, Inc. v. Miller,* 966 F.2d 1178, 1179 (7th Cir.1992); *Twohy v. First Nat'l Bank,* 758 F.2d 1185, 1196 (7th Cir.1985). However, the concern in such cases is that when a losing plaintiff seeks to amend his complaint post-judgment, he is in effect asking the court to set aside a final judgment, since if the court allows the amendment it will necessarily have to undo its prior dismissal of the entire action. *First Nat'l Bank v. Cont'l Ill. Nat'l Bank & Trust Co.,* 933 F.2d 466, 468 (7th Cir.1991). In such cases, before the plaintiff will be permitted to amend, he must demonstrate that one of the criteria for altering judgment listed in Rules 59(e) and 60(b) has been satisfied. In contrast, the present plaintiffs do not attempt an end run around an unfavorable judgment but rather seek relief consistent with a favorable judgment. Thus, the cases controlling the present issue are those in which courts allowed plaintiffs to file supplemental complaints to enforce ongoing injunctions or consent decrees. *See Griffin,* 377 U.S. at 226–27, 84 S.Ct. 1226 (holding that plaintiffs could file supplemental complaint challenging conduct occurring after original injunction granted); *Keith,* 858 F.2d at 473–76 (allowing plaintiffs to file supplemental complaint challenging conduct occurring after entry of final consent decree); *Poindexter v. La. Fin. Assistance Comm'n,* 296 F.Supp. 686, 688–89 (D.La.1968) (same). In such cases, the courts did not require the plaintiff to move to set aside or vacate the original judgment before filing a supplemental complaint seeking additional relief. Indeed, it would be odd to require a prevailing plaintiff to move to set aside or vacate a favorable judgment as a condition of seeking supplemental relief consistent with the judgment.

Further, to the extent that the Seventh Circuit's cases express concern about district courts allowing supplemental pleadings after relinquishing jurisdiction over an action, I note that in the McCaslin and Northwest Howell judgments, I expressly retained jurisdiction "to entertain such further proceedings and to enter such further orders as may be necessary or appropriate to implement and/or enforce the provisions of this injunction." (Northwest Howell Docket # 98; McCaslin Docket # 80.) Thus, unlike the failure to state a claim cases, in the present cases, I did not relinquish jurisdiction by entering final judgment.

Further, "[t]he district court has discretion to hear a motion to file a supplemental pleading at any time during which the action is before it." 6A Wright & Miller, *supra,* § 1509, at 205. Because defendants seek dissolution of the McCaslin and Northwest Howell injunctions, these cases are "before me" pursuant to defendants' Rule

60(b)(5) motions. The issues raised in defendants' motions and the claims stated in plaintiffs' proposed supplemental complaints are part of the same case or controversy that plaintiffs initiated when they filed their original pleadings in the McCaslin and Northwest Howell suits. Thus, because such cases are properly before me and the supplemental relief sought is consistent with the existing judgments, I have jurisdiction to allow plaintiffs to file supplemental complaints.

Finally, defendants argue that allowing plaintiffs to file supplemental complaints would be prejudicial because such complaints would be untimely and burdensome. I may consider prejudice in determining whether to permit a supplemental pleading. *See Twin Disc, Inc. v. Big Bud Tractor, Inc.,* 772 F.2d 1329, 1338 (7th Cir.1985). However, I disagree that plaintiffs' supplemental complaints would be untimely or burdensome. Plaintiffs have diligently pursued the McCaslin and Northwest Howell actions, both in their administrative and judicial phases, since defendants prepared the SEISs and moved to set aside the injunctions. Thus, plaintiffs have not unduly delayed these matters. Defendants also argue that the supplemental pleadings would "intertwine" the challenges to the 2003 and 2006 RODs and complicate the defense (Br. in Opp. at 4), but this is semantics. The present litigation will focus on the 2006 RODs, and defendants will not be unreasonably burdened.

Thus, I will grant plaintiffs' motions to file supplemental complaints in the McCaslin and Northwest Howell actions.

## III. CONCLUSION

The effect of the above rulings is that the 2006 RODs in McCaslin and Northwest Howell are now before me. I order that defendants respond to the supplemental complaints within 20 days of this order. In addition, I will set a telephone conference for **June 16, 2008** at **2:30 p.m.** to address future proceedings, including possible settlement. The court will initiate the call.

For the reasons stated,

**IT IS ORDERED** that defendants' motions to lift the injunctions in Case Nos. 03–C1023 and 04–C–0254 are hereby **DENIED WITHOUT PREJUDICE.**

**IT IS FURTHER ORDERED** that plaintiffs' motions for leave to file supplemental complaints in Case Nos. 03–C–1023 and 04–C–0254 are hereby **GRANTED,** and that such cases are hereby **REOPENED.** The clerk of court is directed to file the supplemental complaints that are currently attached to plaintiffs' motions (Attachment # 1 to Docket # 181 in Case No. 03–C–1023, and Attachment # 1 to Docket # 164 in Case No. 04–C–0254) as new docket entries in each case. Defendants shall answer or otherwise respond to the supplemental complaints within 20 days of the date of this order.

**IT IS FURTHER ORDERED** that in Case No. 03–C–1023, plaintiffs' motion to file a sur-reply brief (Docket # 175) and defendants' motion for leave to file a supplemental response (Docket # 185) are **GRANTED.**

**IT IS FURTHER ORDERED** that in Case No. 04–C–0254, plaintiffs' motion to file a sur-reply brief (Docket # 159) and defendants' motion for leave to file a supplemental response (Docket # 168) are **GRANTED.**

**IT IS FURTHER ORDERED** that the caption in Case No. 03–C–1023 be amended pursuant to Fed.R.Civ.P. 25(d) to reflect the current office holders that are sued in their official capacities: Abigail Kimbell, current Chief of the U.S. Forest Service, is substituted for Dale Bosworth; and Ed Schafer, the current Secretary of Agriculture, is substituted for Charles Conner and Ann Veneman. Kimbell and Schafer are currently the only defendants in Case No. 03–C–1023.

**FINALLY, IT IS ORDERED** that the caption in Case No. 04–C–0254 be amended pursuant to Fed.R.Civ.P. 25(d) to reflect the current office holders that are sued in their official capacities: Abigail Kimbell, current Chief of the U.S. Forest Service, is substituted for Dale Bosworth; and Ed Schafer, the current Secretary of Agriculture, is substituted for Charles Conner and Ann Veneman. Kimbell and Schafer are currently the only defendants in Case No. 04–C–0254.